[Cite as *State v. Iverson*, 2023-Ohio-1601.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-08-076 |
| - vs - | : | O P I N I O N<br>5/15/2023 |
| | : | |
| BRYANT JASON IVERSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR 2022 03 0370

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Michele Temmel, for appellant.

**BYRNE, J.**

{¶1} The Butler County Court of Common Pleas found Bryant Jason Iverson guilty of two counts of gross sexual imposition and sentenced him to consecutive prison terms. Iverson appeals from the sentence imposed by the court. For the reasons detailed below, we affirm.

## I. Facts and Procedural History

{¶2}    In March 2022, a Butler County grand jury indicted Iverson on four counts: Count One, gross sexual imposition (a third-degree felony); Count Two, gross sexual imposition (a fourth-degree felony); Count Three, sexual battery (a third-degree felony); and Count Four, gross sexual imposition (a fourth-degree felony).  The indictment arose from allegations that Iverson sexually abused his two minor daughters over the course of many years.

{¶3}    In June 2022, Iverson, Iverson's attorney, and the prosecutor appeared before the trial court to enter into a plea agreement.  Iverson agreed to plead guilty to Count One and Count Four.  In return, the state agreed to seek dismissal of the remaining counts.

{¶4}    At the plea hearing, the court engaged Iverson in a Crim.R. 11 colloquy to ensure that Iverson was entering his pleas voluntarily, knowingly, and with an understanding of the constitutional rights he was waiving upon entering the pleas.  The court further informed Iverson of the potential maximum sentences for each count (60 months on Count One and 18 months on Count Four) and that the court could impose those sentences consecutively.

{¶5}    After Iverson acknowledged his understanding of the rights he was foregoing by pleading guilty, and after Iverson acknowledged his understanding of the potential maximum sentence he could receive, Iverson pleaded guilty to Counts One and Four.  The court accepted Iverson's pleas and found him guilty on both counts.

{¶6}    Prior to sentencing, Iverson filed a sentencing memorandum.  In it, Iverson presented argument concerning the purposes of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors of R.C. 2929.12.  Iverson argued that he had no prior criminal background and was therefore unlikely to commit other crimes.  Iverson admitted that he caused the victims to suffer mental injury, and that they "must have suffered

psychological harm." However, he went on to state that "there has not been any evidence put before the Court of the seriousness of that psychological harm." Iverson further stated that he had taken responsibility for his actions and had shown remorse.

{¶7} Regarding the question of whether his anticipated prison terms should be imposed concurrent or consecutive to one another, Iverson argued that concurrent sentencing was appropriate. Referring to the statutory findings that a trial court must make to impose consecutive sentences, Iverson argued, pursuant to R.C. 2929.14(C)(4)(b), that there was no evidence to support the conclusion that a single prison term would fail to adequately punish him.

{¶8} The Butler County Probation Department prepared a presentence-investigative report that detailed the offenses. We do not need to discuss the specifics of the offenses here. In general, however, the minor victims alleged numerous sexual offenses committed against them by their father, which offenses occurred in the victims' bedroom. The abuse was frequent and lasted for years prior to disclosure.

{¶9} In July 2022, Iverson appeared before the court for sentencing. At sentencing, Iverson's attorney argued in mitigation. Counsel acknowledged that the sentence would include prison time due to the statutory presumptions but asked for leniency. Counsel noted that Iverson was his family's "primary financial breadwinner" and that Iverson wanted to work to continue to provide for his family. Counsel argued that the possibility of recidivism was low and that Iverson "is not going to ever have access to these children alone again." Iverson then spoke to the court, stating:

> I'm here to take responsibility for the grievous choices and actions I have made, for the hurt and devastation those actions have caused, for the threat (indiscernible) my victims. But also, everyone surrounded and affected by what I have chosen to do.
>
> Not only did my victims suffer the trauma and pain of my actions, but they also lost a father. A father was supposed to protect and

shelter and keep any harm to befall them – hopefully, be the very person to take it all away.

Because of those things I have done, my entire family will now feel and live with the consequences of my actions. (Indiscernible) the laws, anger, and stress that will continually come to them.

This obviously has only no one to blame for my actions except for myself. I have made the terrible choices in the things I did. And I wish every day that I could undo every single moment, not for the benefit of myself or the situation I'm in, but to give those girls their lives back.

I'd like them whole and pain-free again, to erase those memories, the cause of fear and struggle they must feel. And because of me, let them go and live normal, (indiscernible) lives. I can't even begin to feel or understand the mess of emotions and pain they go through. There's nothing I can do or say to bring even a shred of help or rectification to them.

All I can do now is take absolute responsibility for everything that I have done, accept the consequences, and do everything in my power and ability never to cause anything like this ever again. The long road ahead of me is nothing compared to the difficulty and pain these two people will have to endure the rest of their lives, or the struggle and stress that's affected (indiscernible) will have to go through. I will do anything and everything in my control and abilities, ordered or otherwise, to ensure (indiscernible) this could ever happen again to anyone by me.

{¶10} The court then indicated it had reviewed the presentence-investigative report. The court stated that it had considered the "statutory requirements and factors given in 2929.11 and [2929.]12 of the Revised Code * * *." The court further indicated that it had considered the comments and the letters submitted. The court considered the fact that the offenses involved multiple victims.

{¶11} The court then imposed a sentence of 42 months in prison on Count One and 18 months in prison on Count 4. The court stated it would impose the sentences consecutively for the following reasons:

I do find that consecutive sentences are necessary to protect

- 4 -

the public from future crime, or to punish the offender – more appropriate, in this (indiscernible). I'm going to find the consecutive sentences are not disproportionate to the seriousness of the offender's conduct, and the danger offender poses to the public. And finally, I'm going to find that the harm was so great or unusual, because of the multiple victims involved, that a single term does not adequately reflect the seriousness or [sic] the Defendant's conduct.

In the judgment of conviction entry, the court indicated the following:

The Court finds that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The court also finds that:

- Consecutive Sentences are necessary to protect the public from future crime
- Consecutive Sentences are necessary to punish the defendant
- At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses was so great and unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the defendant's conduct.

{¶12} Iverson appeals, raising two assignments of error.

## II. Law and Analysis

### A. Consecutive Sentence Findings Under R.C. 2929.14(C)(4)

{¶13} Iverson's first assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. IVERSON WHEN IT SENTENCED HIM TO CONSECUTIVE SENTENCES IN THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS.

{¶14} Iverson argues that the record fails to support the trial court's consecutive sentence findings.

### 1. Applicable Law

{¶15} When imposing consecutive sentences, a sentencing court is required "to

make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry* * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. R.C. 2929.14(C)(4) states:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶16} Stated more simply, to impose consecutive sentences, a sentencing court must find (1) "that the consecutive service is necessary to protect the public from future crime or to punish the offender[,]" (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[,]" and (3) that at least one of the three conditions described in R.C. 2929.14(C)(4)(a), (b), or (c) apply. R.C. 2929.14(C)(4).

{¶17} "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel." *Bonnell* at ¶ 29, citing Crim.R. 32(A)(4). "[A] word-for-word

recitation of the language of the statute is not required," though, "and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

### 2. Standard of Review

{¶18} R.C. 2953.08(G)(2) defines the standard of review for felony-sentencing appeals. *State v. Day*, 12th Dist. Warren Nos. CA2020-07-042 and CA2020-7-043, 2021-Ohio-164, ¶ 6. As applicable here, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this division if it *clearly and convincingly* finds either of the following:
>
> (a) *That the record does not support the sentencing court's findings un*der division (B) or (D) of section 2929.13, division (B)(2)(e) or *(C)(4) of section 2929.14*, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

(Emphasis added.)

{¶19} "The consecutive sentence statute, R.C. 2929.14(C)(4), is one of the relevant statutes specifically mentioned in R.C. 2953.08(G)(2)." *State v. Richey*, 12th Dist. Clermont Nos. CA2022-08-038 thru CA2022-08-041, 2023-Ohio-336, ¶ 12. "Thus, there are two ways that a defendant can challenge consecutive sentences on appeal." *State v. Shiveley*, 12th Dist. Clermont No. CA2022-04-017, 2022-Ohio-4036, ¶ 7. "The defendant can argue either that the imposition of consecutive sentences is contrary to law because the trial court failed to make the necessary consecutive sentence findings required by R.C. 2929.14(C)(4), or that the record does not support the trial court's consecutive sentence findings made under R.C. 2929.14(C)(4)." *Richey* at ¶ 12, citing *Shiveley* at ¶ 7. "These are the only two means that the legislature provided to defendants to challenge their consecutive sentences on appeal." *Id.*, citing *State v. Gwynne*, Slip Opinion No. 2022-Ohio-

4607, ¶ 11.

{¶20} In this appeal, Iverson does not dispute that the trial court made the consecutive sentence findings required by R.C. 2929.14(C)(4). Iverson therefore concedes that the trial court's decision to impose consecutive sentences was not clearly and convincingly contrary to law under R.C. 2953.08(G)(2)(b). *Richey* at ¶ 13.

{¶21} Instead, Iverson argues—pursuant to R.C. 2953.08(G)(2)(a)—that the record does not support the trial court's consecutive sentence findings under R.C. 2929.14(C)(4) and (C)(4)(b). As we explained in *Richey*, the Ohio Supreme Court recently held that "[s]uch a challenge requires this court to review the record de novo and decide whether the record clearly and convincingly does not support the trial court's consecutive sentence findings." *Richey* at ¶ 13, citing *Gwynne* at ¶ 1. In conducting this de novo review, this court "essentially functions in the same way as the trial court when imposing consecutive sentences in the first instance." *Gwynne* at ¶ 21.

{¶22} The "record" for purposes of appellate review of felony sentences under the R.C. 2953.08(G)(2) consists of any of the following that may be applicable:

> (1) Any presentence, psychiatric, or other investigative report that was submitted to the court in writing before the sentence was imposed.* * *
>
> (2) The trial record in the case in which the sentence was imposed;
>
> (3) Any oral or written statements made to or by the court at the sentencing hearing at which the sentence was imposed; [and]
>
> (4) Any written findings that the court was required to make in connection with [a grant of judicial release].

R.C. 2953.08(F)(1)-(4). *Accord Gwynne*, 2022-Ohio-4607 at ¶ 28, fn. 6.

{¶23} In conducting the de novo review of the record, this court "essentially functions in the same way as the trial court when imposing consecutive sentences in the first

instance." *Gwynne* at ¶ 21. However, we are constrained "to considering only those consecutive sentence findings that the trial court actually made." *Richey* at ¶ 14, citing *Gwynne* at ¶ 21. "Therefore, upon a de novo review of the record, this court may reverse or modify consecutive sentences—including the number of consecutive sentences imposed by the trial court[,]" but only if we clearly and convincingly find "that the record *does not* support the trial court's consecutive sentence findings made under R.C. 2929.14(C)(4)." (Emphasis added.) *Id.*, citing *Gwynne* at ¶ 12. This means that we may only reverse or modify consecutive sentences when we have "a firm belief or conviction that the proposition of fact represented by each finding is not true on consideration of the evidence in the record." *Gwynne* at ¶ 21.

### 3. Analysis

{¶24} First, Iverson challenges the trial court's finding under R.C. 2929.14(C)(4) that,

> consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public* * *.

Iverson asserts that consecutive service was not necessary to protect the public and that he is not a danger to the public because these were his first criminal offenses, and they involved his daughters. He notes that he will be required to register as a sex offender upon his release from prison and that he will therefore be monitored while out in public. He notes his gainful employment and his position as the family breadwinner.

{¶25} Upon our de novo review of the record, we disagree with Iverson's argument regarding the trial court's findings under R.C. 2929.14(C)(4). The record reflects that Iverson preyed on his minor daughters for years, repeatedly sexually molesting them inside their home and in their bedrooms. The fact that these repeated, ongoing, and heinous acts

did not lead to a criminal conviction until recently, and the fact that Iverson has not been convicted of any other criminal offenses, do not diminish the threat he poses to the public. The record in this case demonstrates that Iverson has a significant history of criminal behavior with respect to his minor daughters. Such a history presents a significant likelihood that Iverson may engage in similar criminal behavior in the future, thus supporting the trial court's findings. Likewise, the fact that Iverson engaged in abuse for years, in secret, suggests that Iverson may also seek to secretly engage in similar acts in the future, out of the eye of sex offender monitoring efforts. And we fail to see how Iverson would present a reduced threat in the future because in the past he was gainfully employed, was his family's breadwinner, and served in the military.

{¶26} Iverson appears to suggest that the public at large is not in danger because he molested family members, rather than non-family members. We find the opposite. Iverson's willingness to sexually abuse his own daughters—the very people he should have been most inclined to protect—indicates a greater potential that he might abuse children with whom he does not share a familial bond. Moreover, that Iverson's offenses involved multiple victims demonstrates a form of recidivism. *State v. Sweeney*, 8th Dist. Cuyahoga No. 80981, 2003-Ohio-556, ¶ 10. The trial court's determination that consecutive sentences were necessary to protect the public from future crime and that consecutive sentences were not disproportionate to the seriousness of Iverson's conduct and the danger he posed to the public were supported by the record. Likewise, the trial court's determination that consecutive sentences were necessary to punish Iverson was supported by the fact that Iverson sexually abused not one, but two of his daughters. If the trial court had sentenced Iverson to concurrent sentences, such a sentence would have effectively given Iverson a "free pass" with respect to his abuse of one of his daughters. That the trial court declined to do so is supported by the record.

{¶27} Accordingly, we do not find that the record does not support the trial court's consecutive sentencing findings under R.C. 2929.14(C)(4).[1] *Gwynne*, 2022-Ohio-4607 at ¶ 12; *Richey*, 2023-Ohio-336 at ¶ 14; *State v. Hunter*, 12th Dist. Butler No. CA2022-05-054, 2023-Ohio-1317, ¶ 30.

{¶28} Second, Iverson challenges the trial court's finding under R.C. 2929.14(C)(4)(b) that,

> At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶29} Iverson argues that there is nothing in the record to suggest that a concurrent sentence would not adequately punish him. He again notes his lack of a prior criminal history. He notes his military service and honorable discharge, and his history of gainful employment after serving in the military.

{¶30} Upon our de novo review of the record, we disagree with Iverson's arguments concerning the trial court's findings under R.C. 2929.14(C)(4)(b). As described above, Iverson does not dispute that the offenses were committed as part of one or more courses of conduct. He also expressly concedes in his appellate brief that the offenses were "unusual" in that the victims were his daughters.

{¶31} Iverson limits his argument to whether the record supports the conclusion that a single prison term for the multiple offenses adequately reflects the seriousness of his conduct. We find that it does not. Iverson's offense involved two victims, each with their own identity, and each with their own substantial trauma resulting from Iverson's heinous

---

1. We are aware that our conclusion is awkwardly stated in the negative, or in the double negative. But this is what is required under *Gwynne*. *State v. Hunter*, 12th Dist. Butler No. CA2022-05-054, 2023-Ohio-1317, ¶ 30 fn.3.

actions. As Iverson himself acknowledged at sentencing, these children will have to live with the consequences of what he did for the rest of their lives. A single prison term for the offenses would demean the individual harm caused to each victim and would not adequately reflect the serious and long-term effects of Iverson's conduct.

{¶32} Accordingly, we do not find that the record clearly and convincingly does not support the trial court's consecutive sentencing findings under R.C. 2929.14(C)(4)(b). *Gwynne*, 2022-Ohio-4607 at ¶ 12; *Richey*, 2023-Ohio-336 at ¶ 14; *Hunter*, 2023-Ohio-1317 at ¶ 30. We overrule Iverson's first assignment of error.

### B. Consideration of Felony Sentencing Principles and Factors

{¶33} Iverson's second assignment of error states:

> THE TRIAL COURT FAILED TO ADEQUATELY CONSIDER THE FACTS IN R.C. §2929.11 AND §2929.12.

{¶34} Iverson argues that the trial court failed to consider the purposes and principles of felony sentencing pursuant to R.C. 2929.11 and the seriousness and recidivism factors of R.C. 2929.12. As evidence that the trial court did not consider these statutes, Iverson points to the fact that when the trial court mentioned that it considered R.C. 2929.11 and 2929.12, it did not elaborate with respect to the specific principles and factors set forth in those statutes. Iverson then presents his arguments as to why the purposes and principles and seriousness and recidivism factors suggested a more lenient, concurrent sentence.

{¶35} With respect to R.C. 2929.11, Iverson argues that the court could have accomplished the goal of protecting the public by using minimum sanctions. He cites his lack of a prior criminal record, gainful employment, and other positive qualities discussed earlier. Regarding R.C. 2929.12, he again points to his lack of a criminal history, refers to his display of remorse during the proceedings, and asserts that there was no evidence that

he threatened or punished the victims if they did not do what he asked.

{¶36} As we stated above with respect to Iverson's first assignment of error, and state here again as a reminder, R.C. 2953.08(G)(2) defines the standard of review for felony-sentencing appeals. *Day*, 2021-Ohio-164 at ¶ 6. As applicable here, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this division if it *clearly and convincingly* finds either of the following:
>
> (a) *That the record does not support the sentencing court's findings un*der division (B) or (D) of section 2929.13, division (B)(2)(e) or *(C)(4) of section 2929.14*, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

(Emphasis added.)

{¶37} In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, the Ohio Supreme Court clarified an appellate court's scope of review under R.C. 2953.08(G)(2)(a) and (b) when presented with arguments like those Iverson makes under his second assignment of error—that is, when confronted with arguments concerning a trial court's consideration of the factors set forth in R.C. 2929.11 and 2929.12.

{¶38} First, in *Jones*, the Ohio Supreme Court noted that R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if the appellate court clearly and convincingly finds that the record does not support the sentencing court's finding under certain specified statutory provisions listed in the statute (that is, R.C. 2929.13[B] or [D], R.C. 2929.14[B][2][e] or [C][4], or R.C. 2929.20[I]). *Id.* at ¶ 28. However, the supreme court noted that R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a), and therefore held that R.C. 2953.08(G)(2)(a) does not permit an appellate court to modify or vacate a sentence based on a lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12. *Id.* at ¶ 28-29. R.C.

2953.08(G)(2)(a) therefore does not apply to our review of Iverson's arguments concerning the trial court's consideration of the factors under R.C. 2929.11 and 2929.12.

{¶39} Second, in *Jones*, the Ohio Supreme Court held that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39. The supreme court reasoned that "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Instead, a sentence is not clearly and convincingly contrary to law where a trial court "'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.'" *State v. Lopez-Cruz*, 12th Dist. Butler No. CA2022-07-068, 2023-Ohio-257, ¶ 8, quoting *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

{¶40} As such, we lack the authority to modify or vacate Iverson's sentence based on Iverson's argument that the record did not support the trial court's findings under R.C. 2929.11 and 2929.12. Instead, we are limited to reviewing whether Iverson has presented clear and convincing evidence that his sentence is "otherwise contrary to law."

{¶41} Here, the record reflects that the trial court considered the purposes and principles of sentencing as set forth in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12. The trial court was not required to elaborate as to its consideration of these statutes at the sentencing hearing or incorporate specific findings related to these statutes in the sentencing entry. *State v. Motz*, 12th Dist. Warren No. CA2019-10-109, 2020-Ohio-4356, ¶ 43. Furthermore, the trial court properly imposed postrelease control and Iverson's sentences all fell within the permissible statutory range.

Iverson's aggregate sentence was therefore not contrary to law. We overrule Iverson's second assignment of error.

### III. Conclusion

{¶42} We overrule Iverson's two assignments of error and affirm the sentence imposed by the trial court.

{¶43} Judgment affirmed.

S. POWELL, PJ., and PIPER, J., concur.