[Cite as *State v. Mitchell*, 2017-Ohio-6888.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 105053

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# BRIAN A. MITCHELL

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-603899-A

**BEFORE:** McCormack, J., Keough, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** July 20, 2017

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street, Second Floor
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Kristin M. Karkutt
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant Brian Mitchell appeals from the consecutive sentences imposed by the Cuyahoga County Court of Common Pleas for his convictions of four counts of sexual battery. Mitchell was the youth minister at Columbia Road Baptist Church. During a two-month period of time in 2015, he engaged in sexual conduct with a 16-year-old girl who was a member of the church's youth ministry ("victim" hereafter). He pleaded guilty to four counts of sexual battery and received consecutive prison terms totaling ten years. On appeal, he argues the trial court failed to make the statutory findings necessary to impose consecutive sentences. For the following reasons, we affirm the judgment of the Cuyahoga County Court of Common Pleas.

{¶2} Mitchell was indicted with ten counts of sexual battery in violation of R.C. 2907.03(A)(12). Under that statute, sexual battery is a third-degree felony. The statute prohibits a cleric from engaging in sexual conduct with a minor who is a member of the cleric's congregation. Mitchell, 31 years old and a father of three young children, allegedly engaged in sexual intercourse with the 16-year-old victim on ten occasions between August 15, 2015, and September 25, 2015.

{¶3} Mitchell pleaded guilty to four of the ten counts of sexual battery and the remaining counts were nolled. Before sentencing, he submitted 33 letters from friends and family vouching for his character. At sentencing, the trial court heard from several members of the victim's family about the devastating effect Mitchell's conduct had on the victim and her family, who began attending the church years ago when the victim's father

passed away. The prosecutor then read a long letter from the victim, which revealed how Mitchell took advantage of his leadership position in the church's youth group and pursued the victim for a sexual relationship. Over time, Mitchell worked to earn the victim's trust, telling her he thought of her as a daughter. The victim believed Mitchell was someone whom she could turn to for advice and guidance. Mitchell then began to pursue her intensively by sending her frequent text messages. The tone of the text messages turned from innocent to serious over time. Mitchell also began to confide in the victim regarding his marital problems. The relationship then turned sexual. Mitchell would come to the victim's home while her mother was working and engage in sexual intercourse with her in his car. Even after the events had come to light and Mitchell was arrested for his offenses, the victim was startled to find that he was still sending her emails under a fictitious name professing his love for her.

{¶4} The trial court sentenced Mitchell to five years of prison on each of the four counts of sexual battery, with Counts 2 and 6 running consecutive to each other. On appeal, Mitchell raises two assignments of error:

1. The trial court committed plain error by failing to make the findings necessary to impose consecutive sentences.

2. The trial court erred when it imposed a term of imprisonment of ten years that was clearly and convincingly disproportionate to the danger appellant posed to the public.

{¶5} A review of the argument under the two assignments of error shows that both claims relate to the disproportionality finding required for an imposition of consecutive sentences.   We address the two assignments together.

{¶6} H.B. 86, enacted in 2011, revived a presumption of concurrent sentences. Consecutive sentences can be imposed only if the trial court makes the required findings pursuant to R.C. 2929.14(C)(4).   *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659.   Pursuant to R.C. 2929.14(C)(4), in order to impose consecutive sentences, the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender," that such sentences "are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and that one of the following applies:

(a)    The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b)    At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)    The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶7}** "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel." *Bonnell* at ¶ 29, citing Crim.R. 32(A)(4). "Findings," for these purposes, means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). However, "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29. The trial court is not required to give a "talismanic incantation" of the words of the statute, provided the necessary findings can be found in the record. *Id.* at ¶ 37.

**{¶8}** In addition, in an appeal involving consecutive sentences, such as the instant case, we are required under R.C. 2953.08(G)(2)(a) to review the record, including the findings underlying the sentence, and, to modify or vacate the sentence when we clearly and convincingly find that the record does not support the trial court's findings under R.C. 2929.14(C)(4). *Id.* at ¶ 28.

**{¶9}** Here, our review of the sentencing transcript reflects that the trial court narrated extensively on the lifetime of trauma created by the horrific nature of the offenses committed by Mitchell. The court stressed that Mitchell's position of spiritual trust and authority enabled him to earn the victim's trust readily, rendered his relationship

with the victim "extremely abusive." The court characterized the crime in this case as a "power crime" perpetrated by one in the position of authority against a powerless victim. The court characterized the emotional and psychological damage described by the victim as classic signs of post-traumatic stress disorder. Before imposing consecutive sentences on two of the four counts of sexual battery, the court stated

> So the Court having considered all these things and the nature of this offense, and the specific facts of this offense * * * [a]nd the Court now is confronted with what is an appropriate consequence[.] How much time in prison is *necessary to punish you*? How much time is *not disproportionate* to what you did? How much time is *necessary to protect the community*? How much time is necessary due to the *unusual amount of harm, the great amount of harm*? And there's great harm here. And this is — this test is not an easy test in your situation.

> And your sort of delusional sort of excuse, some sort of emotion and love involved with this is troubling. That's troubling. Because that's — that's extremely delusional, and it will take considerable work on your part to see this could never be anything but abusive. Never could it have been. And that's why these sex offender laws are in place. That's why there's such harsh consequences.
> And so *I'm balancing all of this. I've considered all of those factors.*

> * * *
> I am going to run Counts 2 and 6 consecutive to each other * * * . The amount of harm is *so great or unusual a single prison sentence is not adequate*.

(Emphasis added.)

**{¶10}** Mitchell argues the trial court failed to make the finding regarding proportionality and also argues the record clearly and convincingly shows that his sentence was disproportionate to the danger he posed to the pubic. We disagree with his contentions.

{¶11} While the trial court did not recite the statutory finding word for word regarding proportionality, we are able to clearly discern that the trial court engaged in the correct analysis and to determine that the record contains evidence to support the finding. *Bonnell* at ¶ 29. The court signaled its awareness of the necessity of the proportionality finding when it stated, "How much time in prison is necessary to punish you? How much time is not disproportionate to what you did? How much time is necessary to protect the community?" The court's reasoning, although not a verbatim recitation of the statutory finding that "the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," reflects that the trial court engaged in the appropriate analysis and also placed the finding on the record.

{¶12} Furthermore, our review of the record supports the trial court's finding. The victim's father passed away while she was at a very young age, and she was raised in the church. While an impressionable teenager, she joined the church's youth ministry to seek guidance and direction for her life. Mitchell, taking advantage of his position of spiritual authority and the victim's faith in God, manipulated and groomed the victim for his own sexual gratification.

{¶13} Mitchell argues that the record does not support a finding that his consecutive sentences are not disproportionate to the danger he poses to the public because, as a convicted felon, he will no longer be a member of the clergy and the victim would reach the age of majority within two years. We note that proportionality finding

regarding "the danger the offender poses to the public" is not the same as recidivism for the same crime. Moreover, there are no specific statutory factors for the danger-to-the-public finding; neither is the trial court obligated to state reasons to support its finding. *State v. Jackson*, 8th Dist. Cuyahoga No. 101575, 2015-Ohio-1023, ¶ 14, citing *Bonnell* at syllabus. Mitchell's brazen betrayal of the congregation who had entrusted him to provide spiritual leadership for their young followers could be one of the factors when the court assessed the danger he poses to the public. Given the facts of this case, we do not "clearly and convincingly" find that the record does not support the trial court's finding. The first and second assignment of error are without merit.

**{¶14}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MARY EILEEN KILBANE, J., CONCUR