[Cite as *State v. Shiveley*, 2022-Ohio-4036.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2022-04-017 |
| Appellee, | : | O P I N I O N<br>11/14/2022 |
| | : | |
| - vs - | : | |
| | : | |
| BRANDON M. SHIVELEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2021 CR 01054

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephens Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**M. POWELL, P.J.**

{¶ 1} Appellant, Brandon M. Shiveley, appeals the prison sentence imposed by the Clermont County Court of Common Pleas after he was convicted of pandering sexually oriented matter involving a minor and illegal use of minor in nudity-oriented material or performance. For the reasons discussed below, we affirm his sentence.

{¶ 2} In November of 2021, appellant was indicted on 21 counts of pandering and 26 counts of illegal use, all felonies of the second degree. The videos and photographs in appellant's possession depicted nude, prepubescent females engaged in various sexual acts, and some of the photos and videos involved identified victims. Appellant downloaded, copied, and traded these photographs and videos through various social media platforms and online storage spaces, including Snapchat, Dropbox, and Omegle. Appellant admitted that this behavior began four or five years ago. On several occasions, his online accounts were shut down due to child pornography content, and he would open new accounts to continue trading images and videos. A search warrant revealed that appellant opened seven different Snapchat accounts and one Dropbox account, all of which contained pornographic videos and images of prepubescent females.

{¶ 3} In February of 2022, as part of a plea bargain, appellant plead guilty to five counts of pandering and one count of illegal use. The state dismissed the remaining charges. The court sentenced appellant to consecutive three-year sentences for three of the pandering counts, a consecutive six-year sentence for one of the pandering counts, and concurrent three-year sentences for one count of pandering and the one count of illegal use, resulting in an aggregate minimum prison sentence of 15 years.

{¶ 4} Appellant now appeals his sentence, raising the following as his only assignment of error:

{¶ 5} THE TRIAL COURT ERRED IN ORDERING APPELLANT'S TERMS OF IMPRISONMENT TO RUN CONSECUTIVELY.

{¶ 6} In his assignment of error, appellant challenges the trial court's decision to impose consecutive sentences for four of his convictions. Appellant argues that the record does not support a finding that (1) consecutive sentences are not disproportionate to the

danger appellant poses to the public, and (2) that the "actual" harm caused by appellant was "so great or unusual" that no single prison term was sufficient to address that harm.

{¶ 7} We review a felony sentence according to R.C. 2953.08(G)(2). *State v. King*, 12th Dist. Butler No. CA2018-05-101, 2019-Ohio-1492, ¶ 8. The statute provides that an appellate court may modify or vacate a felony sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7. Thus, there are two ways that a defendant can challenge consecutive sentences on appeal. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4), or the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *State v. Hawley*, 8th Dist. Cuyahoga No. 108254, 2020-Ohio-1270, ¶ 10. Appellant concedes that his sentence is not contrary to law, and argues only that the consecutive sentence findings are not supported by the record.

{¶ 8} As the Ohio Supreme Court has explained, "because R.C. 2953.08(G)(2)(a) specifically mentions a sentencing judge's findings made under R.C. 2929.14(C)(4) as falling within a court of appeals' review, the General Assembly plainly intended R.C. 2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences." *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, ¶ 16. Accordingly, this court can only modify the trial court's sentence if we were to clearly and convincingly find that the record does not support the trial court's findings made according to R.C. 2929.14(C)(4). *State v. Velazquez*, 12th Dist. Clinton No. CA2020-02-002, 2020-Ohio-4009, ¶ 8.

{¶ 9} Pursuant to the requirements of R.C. 2929.14(C)(4), the trial court found that (1) the consecutive sentence was "necessary to protect the public from future crime or to

punish the offender," (2) the consecutive sentences were "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and (3) that at least two of the multiple offenses were committed as a part of "one or more courses of conduct," and the harm caused by two or more of the multiple offenses was "so great or unusual" that no single prison term for any of the offenses committed adequately reflected the seriousness of the offender's conduct. R.C. 292914(C)(4).

{¶ 10} In his assignment of error, appellant challenges the second and third statutory findings of the trial court. We address them out of order.

## REVICTIMIZATION IS A GREAT OR UNUSUAL HARM

{¶ 11} Appellant challenges the third statutory finding of the trial court, asserting that the harm caused by his multiple offenses was not so great or unusual that it warrants consecutive sentences. *See* R.C. 2929.14(C)(4)(b). Appellant alleges that the record contains only "two passing references to harm." At the sentencing hearing, the prosecutor stated that appellant "perpetuates the victimization of each of the children that are contained in these [images]." The court also stated, "[i]f no one viewed it, they wouldn't make it." Appellant urges this court to find that these "conclusory statements" are insufficient evidence that the minors depicted in the photos and videos "actually suffered harm." He suggests that for the victims to be revictimized, the minors must suffer "actual harm," or otherwise be aware of appellant's conduct, and because the victims did not submit statements or speak at sentencing, there is no evidence of "actual harm."

{¶ 12} This assertion ignores the well-established legal conclusion that children of child pornography are continuously revictimized. *State v. Bonness*, 8th Dist. Cuyahoga No. 96557, 2012-Ohio-474, ¶ 20. The United States Supreme Court has long held that "the distribution of photographs and films depicting sexual activity by juveniles is intrinsically

related to the sexual abuse of children." *New York v. Ferber*, 458 U.S. 747, 759, 102 S.Ct. 3348 (1982). As the Court explained, these materials not only create a "permanent record" of the child's participation, but the harm to the child is exacerbated by their circulation. *Id.* To effectively control the production of this material, the distribution network for child pornography must be closed, which is not possible by pursuing only those who produce the material; instead, the only practical method is to dry up the market by imposing severe criminal penalties on persons—like appellant—who promote the product. *Id.*

{¶ 13} Additionally, when amending 18 U.S.C. 2252, the United States Congress found that "[c]hild pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed." *See Effective Child Pornography Prosecution Act of 2007*, Pub. L. No. 110-358, § 102(3), 122 Stat. 4001 (2008). The Fifth Circuit has also held that individuals who view or circulate child pornography harm the child "(1) by perpetuating the abuse initiated by the creator of the material, (2) by invading the child's privacy, and (3) by providing an economic motive for producers of child pornography." *United States v. Norris*, 159 F.3d 926, 929-930 (5th Cir.1998); *State v. Starcher*, 5th Dist. Stark No. 2015CA00058, 2015-Ohio-5250, ¶ 36.

{¶ 14} Likewise, Ohio courts have held that child pornography is not a victimless crime, and appellant 's assertion that he simply "commit[ed] crime in his bedroom" ignores how "the dissemination of that child pornography exacerbates and continues [the] exploitation of the victimization of that child." *State v. Fraley*, 12th Dist. Butler No. CA2021-10-131, 2022-Ohio-3270, ¶ 21. By possessing graphic images of minors depicted in sexual activity, appellant "enabl[ed] and support[ed] the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects." *State v. Pearce*, 12th Dist. Butler No. CA2021-12-161, 2022-Ohio-2617, ¶ 13. Thus, we reject appellant's

"insinuation that possession of child pornography is not particularly harmful to the children depicted therein." *State v. Smith*, 6th Dist. Ottawa No. OT-21-008, 2021-Ohio-4234, ¶ 26.

{¶ 15} In addition to arguing that there was no harm, appellant alternatively argues that the record does not support a finding that the harm was "great or unusual." However, the record before the trial court at sentencing "highlights the manner of harm previously articulated by other courts and embraced by us today." *Id.* at ¶ 31 (finding that the information provided by the presentence-investigative report supported the trial court's determination that the harm caused by appellant's possession of child pornography was great or unusual).

{¶ 16} Here, the record reflects that ORAS did not accurately capture the appellant's deviant sexual preferences.[1] The indictment detailed the videos and images appellant downloaded, which included a prepubescent known victim engaged in a sexual act with a carrot, a prepubescent girl masturbating, a prepubescent girl unknowingly being filmed while showering, an infant with an adult male finger inserted into the anus, a prepubescent girl masturbating with a hair brush, a prepubescent female performing fellatio on an adult male who ejaculates on the child's face, prepubescent females digitally penetrating each other, a prepubescent female masturbating with a red sex toy, and several other videos and images of nude prepubescent females. Many of these videos and images were downloaded more than once and to different accounts.

{¶ 17} Due to the content of the material, an ORAS manual override was performed, placing appellant in the high range of risk. The record reflected a concern for the amount of time appellant had been viewing and trading child pornography, which, by his own admission, began four or five years ago. Appellant admitted that he has made several

---

1. ORAS, the Ohio Risk Assessment System, identifies factors that drive a person toward negative criminal behaviors and identifies a person's risk of reoffending.

attempts to stop this behavior on his own, but he was always unsuccessful. The record also reflected a concern for appellant's attitude toward his crimes, in that he expressed some embarrassment and shame, but that he was overall ambivalent about his behavior and his sexual preferences. At sentencing, the judge asked appellant if it was true that appellant did not take his conduct seriously, and appellant responded, "yeah." The record demonstrates that appellant sent large amounts of child pornography to other people over a long period of time, and that while he recognized the seriousness of his conduct, he never sought help and he continued to participate regardless of how many times his accounts were shut down.

{¶ 18} Appellant further argues that based on the plain language of the terms "great" and "unusual," the harm caused to the children depicted in the videos and images does not qualify as either. Appellant states that because these terms are not defined in the statute, we are to use the plain and ordinary meanings of both terms in our analysis. Appellant defines "great" as "akin to being such in an extreme or notable degree," and he defines "unusual" as something that is "not usual, common, or ordinary." He thus concludes that the trial court was required to find that the harm to the minors be "extreme," "uncommon," or "exceptional" to impose consecutive sentences.

{¶ 19} Given the widespread use of social media platforms and online storage spaces, as well as the instantaneous transfer of information facilitated by this technology, there is no guarantee that any pornographic image or video of a child will ever be permanently removed from every space from which it could be retrieved. Regardless of how victims of child pornography progress through the remainder of their lives, these images have the possibility of living on indefinitely. To reiterate the United States Supreme Court, these images create a "permanent record." As a result of this permanence, we find

it difficult to describe this harm as anything other than extreme, uncommon, and exceptional.

## DANGER TO THE PUBLIC

{¶ 20} Appellant also challenges the trial court's second statutory finding, alleging that his prison sentence is grossly disproportionate to any danger he might pose to the public. Appellant's proffered reasons for why "the record does not reflect that [he] put a member of the general public at risk," include (1) that he committed these crimes from his bedroom, (2) that the probation department viewed community control as a reasonable sentencing option, and (3) that the ORAS evaluation categorized him as a "low risk" to commit future crime because he had no contact with the criminal justice system prior to these convictions.

{¶ 21} Appellant's argument that he never put a member of the general public at risk by confining his criminal behavior to his bedroom is not well-taken. As discussed above, consumers of child pornography victimize the children depicted therein by "enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects." *State v. Boggs*, 12th Dist. Butler No. CA2019-07-114, 2020-Ohio-2881, ¶ 14. We also note that while the probation department gave some general parameters and guidelines to the court regarding community control, nothing in the record suggests that the probation department regarded community control to be a proper alternative to incarceration.

{¶ 22} Further, Ohio courts have found that there "are no specific statutory factors for the danger-to-the-public finding." *State v. Mitchell*, 8th Dist. Cuyahoga No. 105053, 2017-Ohio-6888, ¶ 13; *State v. Kiefer*, 6th Dist. Ottawa No. OT-21-005, 2021-Ohio-3059, ¶ 18. While recidivism may indicate the danger an offender poses to the public, R.C.

2929.14(C) requires the trial court to find that consecutive sentences are not disproportionate to that danger, whatever it may be. *Kiefer* at ¶ 18. Thus, appellant must show through clear and convincing evidence that the trial court erred in finding that the consecutive sentences were not disproportionate to the danger he posed to the public.

{¶ 23} Appellant's "lack of a prior criminal record * * * is not by itself dispositive of whether he may reoffend and, in the process, remain a danger to the public." *State v. Balbi*, 8th Dist. Cuyahoga No. 102321, 2015-Ohio-4075, ¶ 11. As noted by the trial court at appellant's sentencing, "recidivism may be likely because the offenses continued over a period of time in a continuing course of conduct * * * which included several attempts to discontinue these activities, only to eventually repeat the same behaviors." While appellant attempts to paint his behavior as "on-again, off-again," appellant opened seven different Snapchat accounts over the past several years, all of which were used to access and trade child pornography. Each time appellant's account was shut down, he would register a new email address with a new account so that he could continue this behavior.

{¶ 24} Appellant fails to explain how the imposition of consecutive sentences was disproportionate to the danger he poses to the public, particularly in light of nature of the content he viewed, his awareness of its severity, and his undeterred and continuous participation in the trading of pornographic images and videos involving children. We find that appellant failed to meet his burden of identifying clear and convincing evidence that the trial court's finding is not supported by the record.

{¶ 25} As a separate argument, appellant asserts that consecutive sentences are inappropriate where it "demean[s] the seriousness of other more violent crimes and harms to other victims," citing *State v. Hawley*, 8th Dist. Cuyahoga No. 108254, 2020-Ohio-1270, ¶ 25. We note that appellant misplaces the Eighth District's discussion in *Hawley*. In reviewing whether Hawley's 56-year prison sentence demeaned the seriousness of other

crimes, the Eighth District examined whether the sentence was "reasonably calculated to achieve the overriding purposes of felony sentencing set forth in R.C. 2929.11." In other words, the court analyzed whether Hawley's sentence was contrary to law.[2] Appellant does not assert that his sentence is contrary to law, and thus a discussion of whether his sentence may demean the seriousness of other crimes and the harm to other victims is not relevant to his challenge.[3]

**CONCLUSION**

**{¶ 26}** Appellant's "portrayal of this case as a run-of-the-mill child pornography possession case minimizes the true severity of the harm" caused to the children depicted in the videos and images that were found on appellant's various accounts. *State v. Smith*, 2021-Ohio-4234 at ¶ 32. Given the nature of the content in appellant's possession, as well as the length of time over which appellant viewed this content, we find that the record supports the trial court's determination that consecutive sentences were appropriate. Accordingly, appellant's sole assignment of error is overruled.

**{¶ 27}** Judgment affirmed.


HENDRICKSON and PIPER, JJ., concur.

---

2. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12." *State v. Miller*, 12th Dist. Butler No. CA2021-07-079, 2022-Ohio-1438, ¶ 7.

3. We note, however, that regardless of the applicability of this argument, Ohio appellate courts have upheld terms similar to appellant's for similar offenders. *State v. Duhamel*, 8th Dist. Cuyahoga No. 102346, 2015-Ohio-3145 (affirmed a 15-year sentence for 29 counts related to child pornography found on defendant's home computer); *State v. Smith*, 6th Dist. Ottawa No. OT-21-008, 2021-Ohio-4234 (affirmed a 15-year sentence for 100 counts related to child pornography found on defendant's laptop computer and thumb drive); *State v. Geddes*, 8th Dist. Cuyahoga No. 91042, 2008-Ohio-6489 (affirmed an 18-year sentence for six separate convictions of pandering sexually-oriented material involving a minor); *State v. Pearce*, 12th Dist. Butler No. CA2021-12-161, 2022-Ohio-2617 (affirming a 16-year sentence for 23 counts related to child pornography).