[Cite as *State v. Spires*, 2024-Ohio-1633.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-07-011 |
| | : | O P I N I O N |
| - vs - | | 4/29/2024 |
| | : | |
| JOHN W. SPIRES II, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2020-2138

Zachary A. Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

**BYRNE, J.**

{¶ 1}   John W. Spires II appeals from the sentence imposed by the Brown County Court of Common Pleas.  For the reasons discussed below, we affirm.

**I. Factual and Procedural Background**

{¶ 2}   In July 2020, a Brown County grand jury returned a multi-count indictment against Spires.  Relevant to this appeal, the grand jury charged Spires with three counts

of first-degree felony felonious assault (counts four, five, and six) and one count of third-degree felony discharge of a firearm on or near prohibited premises (count seven).

{¶ 3} The charges arose following an incident in and around Spires' home in Brown County on June 22, 2020, in which Spires brandished an AR-15 style firearm and fired multiple gunshots towards three Brown County Sheriff's Office law enforcement officers—Deputy Brandon Asbury, Deputy Michael Myers, and Corporal Ryan Wedmore. Spires' attack eventually concluded after one of the officers shot Spires in the hip and leg. Spires surrendered before he bled out.

{¶ 4} In April 2022, a jury found Spires guilty of the four charged counts referenced above. In May 2022, the trial court sentenced Spires to serve a total, aggregate term of a mandatory minimum 18 years in prison, less 672 days of jail-time credit. In so doing, the trial court ordered Spires to serve consecutive mandatory prison sentences of seven, seven, and four years for the three counts of first-degree felony felonious assault, with a concurrent 24-month prison term for the third-degree felony count of discharge of a firearm on or near prohibited premises.

{¶ 5} In June 2022, Spires appealed his sentence. Spires argued that the trial court erred in imposing a mandatory prison time sentence. The state conceded error. We sustained Spires' appeal, finding that R.C. 2903.11(D)(1)(b) provided that a trial court shall impose a mandatory prison term only if the peace officer suffered "serious physical harm" as a result of the offense and that the record was silent as to whether any of the officers suffered serious physical harm. *State v. Spires*, 12th Dist. Brown No. CA2022-06-005, 2023-Ohio-665, ¶ 9.

{¶ 6} We reversed and remanded for resentencing. *Id*. We remanded with instructions that the court give the state the opportunity to develop the record as it relates to harm suffered by the three officers. *Id*. at ¶ 14. We also instructed the trial court to

"comply" with the decision of the Ohio Supreme Court in *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607 ("*Gwynne IV*"),[1] which at the time was controlling precedent requiring that "when a trial court 'makes the statutory findings under R.C. 2929.14(C)(4) for consecutive sentences, it must consider the number of sentences that it will impose consecutively along with the defendant's aggregate sentence that will result.'" *Spires* at ¶ 15, quoting *Gwynne IV* at ¶ 12.

{¶ 7} On remand, the court held a bifurcated sentencing hearing. On the first day of the hearing, the three officers testified concerning how Spires' actions on June 22, 2020, affected them personally and professionally. On the second day of the hearing, Spires' attorney presented argument in mitigation. Afterwards, the state argued its position and requested that the court impose the same prison term it had previously imposed. The state also read into the record letters from two of the officers' wives. The letters described how Spires' actions had affected their husbands and their families.

{¶ 8} Thereafter, the court imposed sentence. As to count four, the court imposed an indefinite prison term consisting of a minimum of seven years and a maximum of ten and one-half years in prison. As to count five, the court imposed a prison term of seven years. As to count six, the court imposed a prison term of four years. And as to count seven, the court imposed a prison term of 24 months.

{¶ 9} The court then stated the following concerning its decision to impose consecutive sentences:

> The Court, at this point in time, does find that consecutive sentences are necessary to protect the public from future crime in order to punish the offender, that they are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public. And that, at

---

1 We refer to this case as *Gwynne IV* because there have been multiple *Gwynne* decisions, two of which are relevant to our analysis in this appeal. The other *Gwynne* decision—*State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851—will be discussed below.

least, two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by those multiple offenses were so [great] or unusual that no single prison term for these offenses and course of conduct adequately * * * reflects the seriousness.

The Court also has a responsibility to protect, not only, the public from you but similarly situated people who think it's a good idea to do what you did. The Court, at this point in time, will run Count Four, Five, and Six consecutive to each other. Count Seven will run concurrent with each other.

{¶ 10} The court subsequently issued a sentencing entry memorializing its sentence. Spires appealed and raised one assignment of error.

## II. Law and Analysis

{¶ 11} Spires' assignment of error states:

THE TRIAL COURT ERRED IN ORDERING THAT THE PRISON TERMS OF THREE OUT OF THE FOUR CONVICTIONS BE SERVED CONSECUTIVELY.

{¶ 12} Spires argues that the record does not support the trial court's consecutive sentence findings. Specifically, Spires argues that the record does not support the trial court's conclusion that he is a danger to the public and that the harm caused by his offenses was sufficiently great or unusual to justify consecutive sentences.

## A. Applicable Law

## 1. Required Findings for Consecutive Sentences

{¶ 13} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. That statute states:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that

- 4 -

consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 14} Stated more simply, to impose consecutive sentences, a sentencing court must find (1) "that the consecutive service is necessary to protect the public from future crime or to punish the offender[,]" (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[,]" and (3) that at least one of the three conditions described in R.C. 2929.14(C)(4)(a), (b), or (c) apply. R.C. 2929.14(C)(4).

### 2. Standard of Review -- Felony Sentencing Appeals

{¶ 15} R.C. 2953.08(G)(2) defines the standard of review for felony-sentencing appeals. *State v. Day*, 12th Dist. Warren Nos. CA2020-07-042 and CA2020-7-043, 2021-Ohio-164, ¶ 6. As applicable here, R.C. 2953.08(G)(2) provides:

The appellate court may take any action authorized by this division if it *clearly and convincingly* finds either of the following:

(a) *That the record does not support the sentencing court's findings under* division (B) or (D) of section 2929.13, division (B)(2)(e) or *(C)(4) of section 2929.14*, or division (I) of section

2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

(Emphasis added.)

{¶ 16} "The consecutive sentence statute, R.C. 2929.14(C)(4), is one of the relevant statutes specifically mentioned in R.C. 2953.08(G)(2)." *State v. Richey*, 12th Dist. Clermont Nos. CA2022-08-038 thru CA2022-08-041, 2023-Ohio-336, ¶ 12. "Thus, there are two ways that a defendant can challenge consecutive sentences on appeal." *State v. Shiveley*, 12th Dist. Clermont No. CA2022-04-017, 2022-Ohio-4036, ¶ 7. "The defendant can argue either that the imposition of consecutive sentences is contrary to law because the trial court failed to make the necessary consecutive sentence findings required by R.C. 2929.14(C)(4), or that the record does not support the trial court's consecutive sentence findings made under R.C. 2929.14(C)(4)." *Richey* at ¶ 12, citing *Shiveley* at ¶ 7.

{¶ 17} After our remand of Spires' first appeal and our instruction to the trial court to consider *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, the Ohio Supreme Court issued its opinion in *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851 ("*Gwynne V*"), which reconsidered *Gwynne IV* and vacated and superseded *Gwynne IV*. In *Gwynne V*, the Ohio Supreme Court provided new guidance regarding consecutive sentences, stating:

> The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record.

*Id.* at ¶ 5. Because *Gwynne V* is now controlling precedent with regard to our review of consecutive sentences, not *Gwynne IV*, we will conduct our review of Spires' consecutive sentences pursuant to the standard we just quoted, and we will not apply de novo review

as Spires—relying on superseded, no-longer-controlling language in *Gwynne IV*—urges.

### 3. Analysis

{¶ 18} In this appeal, Spires does not dispute that the trial court made the consecutive sentence findings required by R.C. 2929.14(C)(4). Spires therefore concedes that the trial court's decision to impose consecutive sentences was not clearly and convincingly contrary to law under R.C. 2953.08(G)(2)(b). *State v. Morris*, 12th Dist. Butler No. CA2022-11-105, 2023-Ohio-3412, ¶ 23, citing *Richey*, 2023-Ohio-336 at ¶ 13.

{¶ 19} Instead, Spires argues—pursuant to R.C. 2953.08(G)(2)(a)—that the record does not support the trial court's consecutive sentence findings under R.C. 2929.14(C)(4). Specifically, Spires challenges the trial court's findings that consecutive service is necessary to protect the public from future crime or to punish Spires, pursuant to R.C. 2929.14(C)(4), and that the harm caused by Spires' conduct was so great or unusual that no single prison term adequately reflects the seriousness of Spires' conduct, pursuant to R.C. 2929.14(C)(4)(b).

{¶ 20} We have reviewed the record of the sentencing hearing, the victim impact testimony, and the letters from the victims' wives. Based on that review, we do not find that the trial court's findings challenged by Spires are clearly and convincingly not supported by the record.

{¶ 21} To the contrary, the trial court's findings in this regard are well supported by the record. First, regarding R.C. 2929.14(C)(4), Spires argues that there was "no basis" for the trial court to find that he is a threat to the public. We disagree. The record reflects that Spires wanted police to kill him. He brandished a high-powered rifle and fired shots toward multiple responding officers. Anyone who is willing to violently attack police in an attempt to end their own life is a danger to the public at large.

{¶ 22} Second, regarding R.C. 2929.14(C)(4)(b), i.e., Spires' claim that the harm caused by his conduct was not so great or unusual as to justify consecutive sentences, Spires focuses on the fact that none of the officers involved were struck by any of his gunfire and none suffered any physical injuries. However, the testimony presented at the sentencing hearing demonstrated the great and unusual harm inflicted on the officers because of Spires' conduct.

{¶ 23} Former sheriff's deputy Michael Myers testified that he was a law enforcement officer for eight years. He had a love and passion for law enforcement. The incident with Spires "changed that." After the incident, he found it very difficult to work as a law enforcement officer. He could not bear the thought of never seeing his family again. He no longer works as a law enforcement officer.

{¶ 24} Myers testified that he sometimes thinks about reapplying to work in law enforcement, and had in fact reapplied, unsuccessfully. He testified that he is not sure whether he could do the job. Three years after the incident, he stated that he did not know what his career path would be at that point.

{¶ 25} The events of June 22, 2020, continued to affect him on a daily basis. He was battling with anxiety and anger stemming from the incident. His drinking "accelerated" after the incident. If he was not at work, he was drinking "a lot." He tried to avoid driving by the area where the incident occurred. He had recently begun to see a therapist to help him with his anxiety and anger.

{¶ 26} Officer Ryan Wedmore testified that he was now working for the Loveland, Ohio Police Department. The incident with Spires affected him personally and professionally. He explained that he gets startled at loud noises and gunfire. He recalled an incident where his daughter dropped something loud in their home and he "zoned" out for a couple seconds. He finds himself crying for "no reason." He also tries to avoid the

location of the incident and one time when he did drive by the area he became very anxious. He began drinking "a lot" after the incident.

{¶ 27} Officer Brandon Asbury testified that he also moved to the Loveland, Ohio Police Department. Officer Asbury testified that in the moment of the incident, he felt "terrible" because he thought he had killed Spires. The event had affected him professionally in that it took all his "confidence" and "passion" about his law enforcement career away. It affected him enough that if he could find a different career he would do so. Personally, he stated that he no longer talks much with friends and family and had lost a lot of sleep. He estimated he had nightmares about the incident, or being in a similar incident, at least twice a week. Alcohol has also been an issue for him and he had seen a therapist.

{¶ 28} The letters of the two wives that were read at sentencing corroborated the victims' testimony that Spires' actions had a profound detrimental impact on their lives. One wife relayed that a year after the incident, she and her husband married. On that day, one of the comments he made to her was how the incident with Spires had changed him. She explained that her point was that even on her wedding day, her husband was still thinking about the incident with Spires. Another wife stated that her husband was now on daily medication as a result of the incident.

{¶ 29} Spires' actions resulted in grave, likely lifelong consequences for the three law enforcement officers. Consecutive sentences were well justified. Spires has not demonstrated that the court's consecutive sentence findings were clearly and convincingly not supported by the record, which he must demonstrate for us to reverse his sentence under R.C. 2953.08(G)(2)(a). *Gwynne V*, Slip Opinion No. 2023-Ohio-3851, at ¶ 5. We overrule Spires' sole assignment of error.

**{¶ 30}** Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.