[Cite as *State v. Hollon*, 2025-Ohio-2725.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                              :

    Appellee,                              :           CASE NO. CA2024-10-075

                                           :           <u>OPINION AND</u>
    - vs -                                 :           <u>JUDGMENT ENTRY</u>
                                           :           8/4/2025

FRED WAYNE HOLLON,                          :

    Appellant.                             :

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2023-CR-00086

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nick Horton, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

# **O P I N I O N**

**BYRNE, J.**

{¶ 1}   Fred Wayne Hollon appeals from his convictions for three counts of rape in the Clermont County Court of Common Pleas. For the reasons described below, we affirm

Hollon's convictions.

## I. Factual and Procedural Background

{¶ 2}   In February 2023, a Clermont County grand jury indicted Hollon on the following counts:

| Counts | Offense | Revised Code Section | Offense Level |
|---|---|---|---|
| 1, 2, 3, 4, 5, 6 | Rape | 2907.02(A)(1)(b) | F1 |
| 7, 8, 9 | Attempted Rape | 2923.02 and 2907.02(A)(1)(b) | F1 |
| 10, 11, 12 | Gross Sexual Imposition | 2907.05(A)(4) | F3 |
| 13, 14, 15 | Endangering Children | 2919.22(B)(5) | F2 |
| 16, 17, 18 | Pandering Sexually-Oriented Material Involving a Minor | 2907.322(A)(3) | F2 |

{¶ 3}   The indictment stemmed from allegations that Hollon engaged in acts of sexual conduct and sexual contact with the minor victim and coerced the victim into performing a sexual act while he watched. The rape and attempted rape counts all alleged that the victim was under 10 years old at the time of the incidents. The victim lived at Hollon's residence and was Hollon's girlfriend's child.

{¶ 4}   The matter proceeded to a jury trial. The testimony and evidence relevant to the issues presented in this appeal are summarized below.

### A. The Jury Trial

### 1. The Victim's Testimony

{¶ 5}   The victim, who was 12 years old when testifying, testified that while alone with Hollon in Hollon's home, Hollon directed her to go to the room she described as the "office." In the office, he directed her to put her knees on a chair so that she was facing the back of the chair. He would then tell her to pull her pants down. He would pull his pants down and then he would rub his "bad spot" (which she explained meant his penis)

on her butt and "poke" her "butthole" with his penis. The victim stated that it "hurt" when he poked her butthole.

{¶ 6} The victim described this scenario occurring three times, when she was wearing three different types of clothing (jeans, jean shorts, and a dress). On two of these occasions, she recalled feeling something "wet" on her butt afterward. Hollon told her the wet substance was "cum" and directed her to wipe it off.

{¶ 7} On cross-examination, Hollon's defense counsel asked the victim whether Hollon's penis was "inside your butt crack or did it actually go in the butthole or just in the butt crack?" The victim responded "Butt crack." Defense counsel responded, "So, it never went inside the butthole? Just on, in your butt crack around your butthole, right?" The victim responded: "Right."

{¶ 8} On redirect, the prosecutor asked the victim if she remembered testifying on direct that Hollon's penis had touched her butthole and that it hurt. She agreed she had. Then the prosecutor reminded her she had, in response to defense counsel's assertion, agreed that Hollon's penis had only gone inside her "butt crack." The prosecutor asked the victim whether Hollon's penis had touched "your butthole or just your butt crack?" The victim replied: "Both."

{¶ 9} On re-cross, the following exchange occurred:

Defense counsel: So, when I asked you earlier and then what [the prosecutor] just asked you, was that it whether it went inside the butthole or not. Okay? Because it was inside the butt crack you said, but it never went inside the butthole. It never actually went inside you, correct?

[The victim]: It poked, but I . . . what do you mean by, I still don't understand.

Defense counsel: So, it was only on the outside of your

butthole poking around? It never actually went inside. Correct?

[The victim]: Poking around, yes.

Defense counsel: Okay, but not inside?

[The victim]: Not inside.

### 2. Forensic Interviewer's Testimony

{¶ 10} Stephanie Helton, a forensic interviewer at the Mayerson Center for Safe and Healthy Children, testified about her interview with the victim following the victim's disclosure. During this interview, the victim described Hollon putting his penis "in her butt, and he was humping her," and that "it hurt." She said her body was shaking, the chair was shaking, and she felt like she would fall off the chair.

### 3. Pediatrician's Testimony

{¶ 11} Dr. Kathi Makoroff testified that she is a pediatric physician at Cincinnati Children's Hospital. Dr. Makoroff discussed sexual abuse of children generally and specifically discussed trauma to the anus. Dr. Makoroff testified that if a child reported pain in conjunction with sexual abuse it would indicate that trauma occurred but such trauma would not necessarily be visible, especially in the case of a delayed disclosure. Dr. Makoroff testified that the anus is "very stretchy" and even in cases of trauma, the anus will heal with no sign of any scarring or tears.

### B. Dismissal of Counts, Jury Verdicts, and Sentencing

{¶ 12} At the close of the State's case, the parties agreed that evidence had not been submitted to prove Counts 6, 9, 10, 11, 12, 14, 15, 17, and 18. Those counts were dismissed and not presented to the jury.

{¶ 13} The jury found Hollon guilty of Counts 1 through 5 (forcible rape under 10

years of age) and one count of endangering children (Count 13). The jury found Hollon not guilty of the remaining two counts of attempted rape (Counts 7 and 8) and the remaining count of pandering sexually-oriented material involving a minor (Count 16).

{¶ 14} The court proceeded immediately to sentencing. The court sentenced Hollon to 25 years to life in prison each on Counts 1 through 5. On Count 13, the court sentenced Hollon to eight to 12 years in prison.

{¶ 15} The court ordered Counts 1 and 2 to be served consecutively. The court ordered the remaining counts to be served concurrently. Thus, the court ordered Hollon to serve an aggregate prison term of 50 years to life.

## II. Law and Analysis

### A. Sufficiency and Weight of the Evidence

{¶ 16} Hollon's first assignment of error states:

> HOLLON'S CONVICTIONS FOR RAPE ON COUNTS ONE, TWO, AND THREE ARE NOT SUPPORTED BY EITHER LEGALLY [SUFFICIENT] EVIDENCE OR THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶ 17} In support of his first assignment of error, Hollon argues that the State failed to submit legally sufficient evidence to establish penetration of the victim's anus. Specifically, Hollon argues that the victim's testimony that Hollon "poked" her butthole was insufficient to establish penetration of the anus and therefore did not establish sexual conduct for purposes of the rape statute. Hollon also argues that his convictions are against the manifest weight of the evidence and points to the victim's testimony that his penis did not go "inside" her butthole.

### 1. Applicable Law – Sufficiency and Manifest Weight of the Evidence

{¶ 18} "When reviewing the sufficiency of the evidence underlying a conviction, an

appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Madden*, 2024-Ohio-2851, ¶ 31 (12th Dist.), citing *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 19} "A manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *Madden* at ¶ 32, quoting *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 20} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.).

{¶ 21} "Although the legal concepts of sufficiency of the evidence and weight of

the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Billingsley*, 2020-Ohio-2673, ¶ 15 (12th Dist.), quoting *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

## 2. Analysis

{¶ 22} R.C. 2907.02(A)(1)(b) defines the rape offenses at issue in this appeal. Under the statute,

> No person shall engage in sexual conduct with another when any of the following applies: . . .
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶ 23} The statutory definition of "sexual conduct," as relevant here, includes "anal intercourse" and "the insertion, however slight, of any part of the body . . . into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 24} "Anal opening" is not defined in R.C. Chapter 2907. When terms are not defined in a statute, "we afford the terms their plain, everyday meanings, looking to how such words are ordinarily used . . . This work includes reading words in their context and construing them 'according to the rules of grammar and common usage.'" *State ex rel. More Bratenahl v. Bratenahl*, 2019-Ohio-3233, ¶12, citing *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 8-10, quoting R.C. 1.42. *Accord State ex rel. Moore v. Fornshell*, 2025-Ohio-65, ¶ 16 (12th Dist.).

{¶ 25} Based on Dr. Makoroff's testimony and our common understanding of the English language, we understand the phrase "anal opening" to be synonymous with the

term "anus." The dictionary definition of "anus" is "the posterior opening of the alimentary canal." *Webster's Third New International Dictionary* (1993). "Alimentary canal" is defined as:

> the tubular and in part sacculated passage that serves the functions of digestion, absorption of food, and elimination of residual waste products, being in man about 30 feet long and comprising the mouth, pharynx, esophagus, stomach, small intestine, and large intestine.

*Id.*

{¶ 26} Thus, for purposes of R.C. Chapter 2907, the term "anal opening" is commonly understood to mean the posterior end of the human digestive system, and the "opening" from which residual waste products are eliminated from the body. According to Dr. Makoroff's testimony, this opening contracts to "barely" an opening but is "very stretchy" in order to allow the body to pass large bowel movements.

{¶ 27} The victim testified that on three occasions, Hollon would take her to the office, have her position herself on a chair facing away from him, and then he would rub his penis on her butt and "poke" her butthole. The victim testified that it "hurt" when he poked her butthole. On two of these occasions, the victim felt something wet on her butt afterward, which Hollon told her was "cum."

{¶ 28} Stephanie Helton, the Mayerson Center forensic investigator, reported that the victim told her that Hollon put his penis "in her butt," humped her, and that it hurt. The victim further told Stephanie Helton that during these incidents, her entire body was shaking, the chair was shaking, and she was concerned she would fall off the chair.

{¶ 29} We have previously held that testimony establishing pressure and pain at the vaginal opening was sufficient to establish vaginal penetration. *State v. Zamora*, 2023-

Ohio-1847, ¶ 10 (12th Dist.) The same is true here. The evidence was not that Hollon was merely rubbing his penis on or around the anal opening. He was forcefully poking and humping the victim with his penis, with sufficient energy to shake the victim and the chair upon which she was positioned, and to cause her pain. On these facts, we believe that jurors could reasonably conclude, beyond a reasonable doubt, that by "poking" the victim's "butthole" with sufficient force to cause the victim pain, the State proved penetration of the anal opening, "however slight." R.C. 2907.01(A).

{¶ 30} Hollon argues that the evidence here showed, at best, an attempt to penetrate the victim's anal opening. Hollon cites *State v. Wells*, 91 Ohio St.3d 32 (2001) for the proposition that evidence of "poking" is not sufficient to demonstrate penetration. In *Wells*, the Ohio Supreme Court considered whether there was sufficient evidence to demonstrate anal intercourse where the defendant's penis was inserted between the victim's buttocks but the evidence failed to show that the defendant's penis penetrated the victim's anus. *Id*. at 33. The supreme court held that evidence of insertion into the buttocks was not sufficient to demonstrate penetration of the "anal cavity." *Id*. at 34.

{¶ 31} *Wells* is not instructive or controlling here. First, there was no testimony or evidence in *Wells* that the defendant touched the victim's "butthole" or anal opening. Second, *Wells* dealt with an earlier version of R.C. 2907.01(A) that defined "sexual conduct" differently than the current version. Before an amendment in 2006, R.C. 2907.01(A) defined sexual conduct as penetration, however slight, into the "anal cavity" of another, whereas the current version of the statute instead refers to the "anal opening."

{¶ 32} Construing the phrase "anal cavity," the Ohio Supreme Court found that a "cavity" is a "natural hollow place *within* the body." (Emphasis in original.) *Id*. at 34. The

supreme court concluded that the term "anal cavity" referenced the "lower portion of the alimentary canal" and not the buttocks, which are not within the body. *Id*. Thus, under this prior definition of "sexual conduct," the court concluded that penetration is demonstrated "when some part of the body or any other item is inserted *into* the anus." (Emphasis added.) *Id*.

{¶ 33} The statute no longer uses the phrase "anal cavity" and instead states that sexual conduct is demonstrated through penetration, however, slight, of the "anal opening." By this phrasing, we conclude that the General Assembly intentionally expanded the definition of sexual conduct to include penetration which would not necessarily involve the penis entering the "lower portion" of the alimentary canal, but penetration that would indicate some insertion or penetration of the penis or other body part into the *opening* of the alimentary system. Based on our discussion above of forceful poking of the "butthole," that standard has been met in this case. That is, jurors could reasonably conclude that forceful poking of the "very stretchy" anal opening would result in some penetration and spreading of the anal opening sufficient to meet the current statutory definition of sexual conduct. Hollon's sufficiency argument lacks merit.

{¶ 34} As to the weight of the evidence, Hollon argues that the victim's testimony, on cross-examination and re-cross examination, that Hollon's penis only touched her butt crack and never went "inside" her butthole indicates that the greater weight of the evidence, at best, supported a charge of attempted rape. We disagree. The victim testified on direct about "poking" of her butthole. The victim clarified on redirect that Hollon's penis touched both her butt crack and her butthole. In addition, Stephanie Helton testified that the victim said that Hollon placed his penis "in her butt."

{¶ 35} This was a child testifying about a sensitive matter in front of a jury about events that took place before she was old enough to process what was occurring. Even though the victim agreed with defense counsel's assertion that Hollon's penis never went "inside" her butthole, this would not necessarily mean that Hollon's penis did not penetrate, however slightly, the anal opening. A young person cannot be expected to carefully articulate the difference between "inside" the anus and what constitutes sufficient penetration of the anal opening for purposes of the rape statute. To the extent there were any inconsistencies in the victim's testimony, the jury was aware of those inconsistencies and weighed those in assessing her credibility. The victim credibly testified about Hollon's poking her "butthole" and the jury was free to believe or disbelieve her testimony. *State v. Carpenter*, 2023-Ohio-2523, ¶ 92 (12th Dist.). For these reasons, we do not find that the jury lost its way and we find that the greater weight of the evidence supported Hollon's convictions.

{¶ 36} We overrule Hollon's first assignment of error.

## B. Consecutive Sentences

{¶ 37} Hollon's second assignment of error states:

> THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES ON COUNTS ONE AND TWO.

{¶ 38} Hollon argues that the trial court, at the sentencing hearing, failed to make one of the findings required to impose consecutive sentences. Specifically, Hollon argues that the court attempted but failed to make the findings under R.C. 2929.14(C)(4)(b).

## 1. Required Findings for Consecutive Sentences

{¶ 39} When imposing consecutive sentences, a sentencing court is required "to

make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry. . . ." *State v. Bonnell*, 2014-Ohio-3177, syllabus. That statute states:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 40} Stated more simply, to impose consecutive sentences, a sentencing court must find (1) "that the consecutive service is necessary to protect the public from future crime or to punish the offender[,]" (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[,]" and (3) that at least one of the three conditions described in R.C. 2929.14(C)(4)(a), (b), or (c) apply. R.C. 2929.14(C)(4).

{¶ 41} When ordering multiple sentences to be served consecutively, a "'word-for-word recitation of the language of the statute'" is not required. *State v. Schwartz*, 2019-Ohio-4912, ¶ 54 (12th Dist.), quoting *Bonnell*, 2014-Ohio-3177 at ¶ 29. In *Bonnell*, the court explained,

> As long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld.

*Bonnell* at *id*.

### 2. Standard of Review – Felony Sentencing Appeals

{¶ 42} R.C. 2953.08(G) defines the standard of review for felony-sentencing appeals. *State v. Day*, 2021-Ohio-164, ¶ 6 (12th Dist.). As applicable here, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 43} "The consecutive sentence statute, R.C. 2929.14(C)(4), is one of the relevant statutes specifically mentioned in R.C. 2953.08(G)(2)." *State v. Richey*, 2023-Ohio-336, ¶ 12 (12th Dist.). "Thus, there are two ways that a defendant can challenge consecutive sentences on appeal." *State v. Shiveley*, 2022-Ohio-4036, ¶ 7 (12th Dist.). "The defendant can argue either that the imposition of consecutive sentences is contrary to law because the trial court failed to make the necessary consecutive sentence findings

- 13 -

required by R.C. 2929.14(C)(4), or that the record does not support the trial court's consecutive sentence findings made under R.C. 2929.14(C)(4)." *Richey* at ¶ 12, citing *Shiveley* at ¶ 7.

### 3. Analysis

{¶ 44} Hollon concedes that the trial court made the first two consecutive sentence findings required by R.C. 2929.14(C)(4). But Hollon contends that his sentence is "contrary to law" because, with respect to the third required finding, the trial court failed to make any of the three alternative consecutive sentence findings set forth in R.C. 2929.14(C)(4)(a), (b), or (c). Specifically, Hollon suggests that the trial court attempted to make the R.C. 2929.14(C)(4)(b) finding but failed to do so. R.C. 2929.14(C)(4)(b), one of the three alternative findings, states:

> At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 45} At sentencing, the court first imposed a sentence of 25-years-to-life on Count 1. Then, with regard to Count 2 and consecutive sentences, the court stated:

> As to Count 2, just so that there's absolutely no misunderstanding by the Department of Corrections [regarding] the seriousness of these charges, I'm going to also impose a sentence of 25 years to life, a minimum of 25 years to life. And order those to be served consecutively with one another. Under 2929.14(C)(4) (a through c) I believe the consecutive structure is necessary so . . . to protect the public, but also to punish the Defendant. I believe a single sentence would totally demean the seriousness of the offenses in these cases. This is one of the serious case . . . I mean, I've sadly seen a lot of these. This is incredibly serious. It's not disproportionate to the severe harm that [the victim] has suffered. And, again, there were multiple offenses of forceable

rape of a child under 10 years of age, which is totally unfathomable to me. So those two will be served consecutively.

{¶ 46} We find that the trial court's comments support imposing consecutive sentences under R.C. 2929.14(C)(4)(b). Specifically, the court's comments indicated that it found that this case involved "multiple offenses," that these multiples offenses caused "severe harm" to the victim, and that a single sentence would "totally demean the seriousness of the offenses."

{¶ 47} The trial court did not use the exact language of R.C. 2929.14(C)(4)(b). But as we have said previously, a word-for-word recitation is unnecessary as long as we can discern from the language used that the trial court intended to and properly made findings under R.C. 2929.14(C)(4)(b). *Bonnell*, 2014-Ohio-3177 at ¶ 29. *See State v. MacPhereson*, 2024-Ohio-5359, ¶ 29 (12th Dist.) (finding that although the trial court did not use the exact statutory language, the record and the court's oral statements supported imposing consecutive sentences under R.C. 2929.14[C][4][b].)

{¶ 48} Other than arguing that the trial court failed to make the necessary findings under R.C. 2929.14(C)(4)(b), Hollon does not argue that the record failed to support the trial court's consecutive sentence findings under that statute. We therefore need not review that issue.

{¶ 49} For these reasons, we find no error in the trial court's imposition of consecutive sentences on Counts 1 and 2. We therefore overrule Hollon's second assignment of error.

{¶ 50} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxes in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Matthew R. Byrne, Judge