[Cite as *State v. Steele*, 2017-Ohio-7605.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 105085

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DANIEL STEELE

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605649-A

**BEFORE:** Stewart, J., E.A. Gallagher, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** September 14, 2017

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender

John T. Martin
Assistant Public Defender
310 Lakeside, Suite 200
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Adam M. Chaloupka
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

**{¶1}** Defendant-appellant Daniel Steele pleaded guilty to a fifth-degree felony count of drug possession (with a one-year firearm specification), a fifth-degree felony count of possession of criminal tools, and a first-degree misdemeanor offense of child endangering. The court sentenced him to serve the maximum sentence of one year on each of the drug possession and the possession of criminal tools counts, and further ordered that those sentences be served consecutively. The court imposed a fine on the child endangering count. On appeal, Steele complains that the court failed to make the required findings for consecutive sentences, that the findings are unsupported by the record, and that the court improperly relied on uncharged and unproven assertions as a basis for imposing consecutive sentences.

**{¶2}** To order consecutive service of sentences, the court must find (1) that consecutive service is necessary to protect the public from future crime or to punish the offender and (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *See* R.C. 2929.14(C)(4). In addition, the court must find one of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

**{¶3}** Steele concedes that the court made the first two findings required to order consecutive service, but argues that the court did not make the third finding. The court stated:

> On the consecutive sentences, [the] Court makes the following findings; that consecutive sentences are necessary to protect the public from future crimes; that consecutive sentences are necessary to punish the offender. Court finds that consecutive sentences are not disproportionate to the seriousness of the offender's conduct.

Tr. 49.

**{¶4}** We agree with Steele that the court did not explicitly make the third finding required under R.C. 2929.14(C)(4). Nevertheless, explicit or word-for-word findings are not required — "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶ 29. *See also State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 13 (the sentencing judge is not required to use "magic words" in order to satisfy its obligation to make findings before imposing consecutive sentences). We have characterized *Bonnell* as employing a more "relaxed" approach to appellate review of consecutive sentences. *State v. Gum*, 8th Dist. Cuyahoga No. 101496, 2015-Ohio-1539, ¶ 15; *State v. Kirkman*, 8th Dist. Cuyahoga No. 103683, 2016-Ohio-5326, ¶ 4.

**{¶5}** With respect to the third finding, the court stated on the record that "there were fifty transactions; there were gun intimidations; there were threats to neighbors." Tr. 49. This statement was based on information presented to the court during sentencing. The assistant prosecuting attorney told the court that citizens in Steele's neighborhood complained about drug dealing. The complaints were supported by surveillance video: the state said that the video depicted individuals engaging in actions "indicative of drug trafficking activity" and then entering Steele's house. The state told the court that the back door to Steele's house had a "cut-out" that enabled Steele to pass drugs "like a drive through window." The presentence investigation report stated that when the police searched Steele's house, they found marijuana "individually packaged for sale," nearly $20,000 in cash, and a loaded firearm.

**{¶6}** Steele's next-door neighbor spoke at sentencing and told the court that he installed the surveillance video cameras because of pervasive drug dealing occurring on his parking lot. The neighbor said that the surveillance video showed as many as 50 drug transactions per day. Following Steele's arrest and bail, the neighbor installed more cameras and lighting in the parking lot. This infuriated Steele, who was "very objectionable to it" and bragged that "his lawyer will spend a lot of his money to make sure he can do business, his business, on my property." Steele told the neighbor that "in the village I come from (Steele is a citizen of Jamaica), people who talk to the police are snakes and snakes get shot with machine guns. * * * Don't mess with me."

{¶7} The court also learned at sentencing that while Steele had been on supervised release pending disposition of this case, he had been charged in a new case with aggravated robbery and new counts of drug trafficking. The assistant prosecuting attorney told the court that as Steele was arrested in the new case, he attempted to wrestle a gun away from one of the police officers.

{¶8} From these facts, we discern from the court's remarks about "fifty transactions; there were gun intimidations; there were threats to neighbors," that the court found Steele's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime committed by him. Steele's new arrest had been prompted by investigations showing that he continued to engage in drug trafficking, and the court noted that the new arrest "did involve violence." And even without the new arrest, Steele's history of drug activity was arguably greater than his plea to a single count of drug possession would indicate — his guilty plea to a firearm specification and agreement to forfeit nearly $20,000 in currency found in his house supports the inference that he engaged in drug trafficking on a larger scale. Steele's threats to the neighbor, which the court characterized as "gun intimidations," coupled with his being arrested on new drug charges despite being under indictment for drug charges in this case, lent support to the conclusion that the court ordered consecutive service of the sentences in order to protect the public from future crimes.

{¶9} Steele argues that the court should not have relied on "uncharged, unproven, and vague allegations of criminal conduct" when ordering consecutive service of the

felony offenses. He maintains that the court should only have relied on facts contained in the presentence investigation report showing that his criminal history "amounted to nothing more than smoking marijuana in the 1990s, a noisy car radio, and an OVI." He claims that those facts are too minor to qualify as a criminal history sufficient to find that the public must be protected from him.

{¶10} Conduct by a defendant that does not result in a conviction, much less a criminal charge, can be considered by the court during sentencing. *State v. Clayton*, 8th Dist. Cuyahoga No. 99700, 2014-Ohio-112, ¶ 16. A caveat is that uncharged conduct cannot be "the sole basis for the sentence." *State v. Gray*, 8th Dist. Cuyahoga No. 91806, 2009-Ohio-4200, ¶ 13, citing *State v. Williams*, 8th Dist. Cuyahoga No. 79273, 2002-Ohio-503. "Courts have historically been permitted to consider hearsay evidence, evidence of an offender's criminal history, the facts concerning charges dismissed, and even offenses for which charges were not filed, but were addressed in the presentence investigation ('PSI')." *State v. Ropp*, 3d Dist. Union No. 14-13-21, 2014-Ohio-2462, ¶ 4. The court can "consider other charges, including charges which were dismissed as part of a plea agreement, during sentencing." *State v. Edwards*, 8th Dist. Cuyahoga No. 85908, 2006 Ohio 2315, ¶ 43. And "prior arrests, facts supporting a charge that resulted in an acquittal, and facts related to a charge that was dismissed under a plea agreement" are valid sentencing considerations. *State v. Bodkins*, 2d Dist. Clark No. 10-CA-38, 2011-Ohio-1274, ¶ 43.

**{¶11}** We have found that a sentencing judge can consider a defendant's uncharged conduct as a basis for establishing a history of criminal conduct for purposes of ordering consecutive service. *State v. Thomas*, 8th Dist. Cuyahoga No. 101263, 2014-Ohio-5153, ¶ 27. This view is consistent with decision from other appellate districts. *See, e.g., State v. Cardwell*, 10th Dist. Franklin No. 15AP-1076, 2016-Ohio-5591, ¶ 15 (defendant's uncharged, but admitted drug use "contributed to the likelihood that he would commit future crimes against the public"); *State v. Bailey*, 5th Dist. Ashland No. 14-COA-008, 2014-Ohio-5129, ¶ 25-30.

**{¶12}** *State v. Green*, 8th Dist. Cuyahoga No. 102421, 2015-Ohio-4078, stated the proposition that "a mere accusation, without more, is insufficient to establish *conduct* of an individual" for purposes of the consecutive sentencing finding relating to an offender's "history of criminal conduct. (Emphasis sic)." *Id*. at ¶ 12. It held that "[c]riminal conduct must be limited to conduct wherein an adjudication has been made that an individual has, in fact, committed a crime." *Id*. at 13.

**{¶13}** *Green* did not consider *State v. Burton*, 52 Ohio St.2d 21, 368 N.E.2d 297 (1977), however, where the Ohio Supreme Court quoted *United States v. Doyle*, 348 F.2d 715, 721 (2d Cir.1965) for the following proposition:

> Furthermore, it is well-established that a sentencing court may weigh such factors as arrests for other crimes. As noted by the Second Circuit United States Court of Appeals, the function of the sentencing court is to acquire a thorough grasp of the character and history of the defendant before it. The court's consideration ought to encompass negative as well as favorable data. *Few things can be so relevant as other criminal activity of the defendant*: *"To argue that the presumption of innocence is affronted by*

*considering unproved criminal activity is as implausible as taking the double jeopardy clause to bar reference to past convictions*."

(Emphasis added.)  *Burton* at 23.

**{¶14}** There is no distinction between the phrase "criminal activity" as used in *Burton* and the phrase "criminal conduct" as used in R.C. 2929.14(C)(4)(c). There is, however, a clear distinction between the words "conduct" and "conviction."

**{¶15}** As a general principle of statutory construction, we presume that the use of different words indicates an intention that the words possess different meanings. *Andover Vill. Retirement Community v. Cole*, 11th Dist. Ashtabula No. 2013-A-0057, 2014-Ohio-4983, ¶ 15.  "[A] conviction is composed of a finding of guilt and a sentence[.]"  *State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, ¶ 6. The ordinary meaning of "conduct" is the manner in which a person behaves or acts. Criminal "conduct" can lead to a conviction, but conduct alone does not make a conviction.   The words are not synonymous.

**{¶16}** R.C. 2929.14(C)(4) uses the words "conduct" and "conviction," but in entirely different ways: the court may order consecutive service if "multiple prison terms are imposed on an offender for *convictions* of multiple offenses" based, in part, on consideration of whether "[t]he offender's history of criminal *conduct* demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."   (Emphasis added.)   The legislature could easily have used the word "conviction" had it intended to limit the sentencing judge's consideration of an offender's history of criminal conduct solely to prior "convictions."   In fact, it is plausible to argue

that by using the phrase "criminal conduct" rather than the word "conviction," the legislature desired, consistent with longstanding precedent concerning the scope of what can be considered for sentencing purposes, that the sentencing judge consider, as part of the consecutive sentencing analysis, activity deemed to be criminal regardless of whether the person is charged with a crime.

**{¶17}** We thus follow Ohio Supreme Court precedent and conclude that the court did not err by considering Steele's uncharged criminal conduct of drug trafficking and intimidation. The record adequately supports a finding that Steele's history of criminal conduct was such that consecutive sentences were necessary to protect the public from future crime committed by him.

**{¶18}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR