[Cite as *State v. Blaskis*, 2025-Ohio-1896.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2024-A-0065** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ANTHONY BLASKIS, | |
| Defendant-Appellant. | Trial Court No. 2024 CR 00178 |

## OPINION AND JUDGMENT ENTRY

Decided: May 27, 2025
Judgment: Affirmed

*April R. Grabman*, Ashtabula County Prosecutor, and *Christine Davis*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*William C. Livingston*, Berkman, Gordon, Murray & Devan, 55 Public Square, Suite 2200, Cleveland, OH 44113 (For Defendant-Appellant).


ROBERT J. PATTON, P.J.

{¶1} Appellant, Anthony Blaskis ("Blaskis"), appeals the decision of the Ashtabula County Court of Common Pleas sentencing him to 24 months in prison. For the following reasons, we affirm.

{¶2} On April 11, 2024, Blaskis was indicted on four counts of Illegal Use of a Minor or Impaired Person in Nudity Oriented Material or Performance, in connection with obtaining sexually oriented images of minor females on Twitter. Blaskis pleaded guilty to four amended counts on July 9, 2024, each count a felony of the fifth degree. In an entry entered on August 8, 2024, Blaskis was sentenced to six months in prison on each of the

four counts, running consecutively to one another, for a total of 24 months. Blaskis was additionally sentenced to five years of post-release control and required to register as a Tier I Sex Offender.

## Assignment of Error

{¶3} Blaskis now timely asserts one assignment of error:

{¶4} [1.] "The trial court's imposition of consecutive sentences is contrary to law."

## Standard of Review

{¶5} Review of felony sentences is governed by R.C. 2953.08(G) which provides that the appellate court may increase, reduce, or modify a sentence, or vacate and remand the sentence, if it clearly and convincingly finds the sentence to be contrary to law. *See State v. Lamb*, 2023-Ohio-2834, ¶ 9 (11th Dist.); *State v. Meeks*, 2023-Ohio-988, ¶ 11 (11th Dist.); *State v. Marcum*, 2016-Ohio-1002, ¶ 1; *State v. Gwynne*, 2023-Ohio-3851. "[A] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *State v. Shannon*, 2021-Ohio-789, ¶ 11 (11th Dist.).

{¶6} Where an appellant fails to object to the imposition of consecutive sentences in the court below, the appellant waives all but plain error on review. *State v. Aikens*, 2016-Ohio-2795, ¶ 53. A review of the record reveals that Blaskis did not object to his sentence in the trial court. A determination that the trial court failed to make the required findings and that the sentence is therefore contrary to law constitutes plain error on appeal. "'When the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences * * *, the

Case No. 2024-A-0065

appellant's sentence [is contrary to law] and constitutes plain error.'" *State v. Williams*, 2024-Ohio-5999, ¶ 10 (11th Dist.), quoting *State v. Haworth*, 2020-Ohio-1326, ¶ 40 (11th Dist.).

{¶7}    Accordingly, we review under a plain error standard, whether Blaskis's sentence was clearly and convincingly contrary to law.

**Analysis**

{¶8}    Blaskis was convicted of four counts of Illegal Use of Minor or Impaired Person in Nudity-Oriented Material or Performance, each a fifth-degree felony. The trial court sentenced Blaskis to six months on each count, for a total of 24 months. The trial court's sentence is within the statutory limit and is in-fact the minimum prison term the trial court can impose for a fifth-degree felony.

{¶9}    The record indicates that the trial court addressed the purposes and principles of felony sentencing as set forth in R.C. 2929.11 and R.C. 2929.12. While the sentencing entry does not note R.C. 2929.11 and R.C. 2929.12, at the sentencing hearing, the trial court stated the following:

> The Court's considered the purposes and principles of the sentencing statutes as the overriding purposes are to punish the offenders and to protect the public from future crime. The Court's considered both recidivism and seriousness factors. The Court notes here that as noted, Mr. Blaskis does not have a prior criminal record. These are the first criminal convictions. He has shown genuine remorse for committing the offenses here by his statement in court.

Dkt. 37, T.p. Sentencing, p. 12-13.

{¶10}   Even had the trial court remained silent on the issue, there is a presumption that the court considered the required factors. *See State v. Jones*, 2014-Ohio-29, ¶ 13 (8th Dist.); *State v. Gaspare*, 2024-Ohio-2508, ¶ 13 (11th Dist.).

Case No. 2024-A-0065

{¶11} Blaskis raises the following issues for review under his single assignment of error (1) his sentence was not supported by the record, (2) his sentence is disproportionate to the seriousness of the crime, (3) consecutive sentences are not necessary to protect the public from future crime, and (4) the harm he caused is not so great or unusual that no single prison term adequately reflects the seriousness of his conduct.

{¶12} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated in R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. As long as the trial court conducted the correct analysis and the record contains evidence to support the findings, the sentences are not contrary to law. *Id.* at ¶ 29.

{¶13} R.C. 2929.14(C)(4) provides in relevant part:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> . . .
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶14} Here, a review of the transcript indicates that the trial court engaged in the proper analysis. The trial court stated:

> [A]s it relates including seriousness factors these are four fifth degree felonies, so they're the lowest level felony and they're all separate crimes, they're four crimes of a sexual nature involving minors. And each one is the illegal use of a minor or impaired person in nudity-oriented material or performance. So these are serious separate crimes . . .

Dkt. 37, T.p. Sentencing, p 13.

> [T]he Court finds that community control would demean the seriousness of the conduct in this case and would not adequately protect the public. Therefore, a sentence of imprisonment is commiserate (sic) with the seriousness of the defendant's conduct.

Dkt. 37, T.p. Sentencing, p. 20.

{¶15} Blaskis's convictions stemmed from obtaining and possessing images containing minors engaged in sexual activity through the internet social media platform, Twitter. The record indicates that Blaskis had more than 150 images in his possession.

{¶16} Our review of the record indicates that the trial court made the required findings under R.C. 2929.14(C)(4). Further, we find that the trial court's sentence is clearly and convincingly supported by evidence in the record. Blaskis's sentence is not contrary to law and therefore does not constitute plain error.

{¶17} It is not the reviewing court's role to substitute its judgment for that of the trial court.

> Ordinarily, appellate courts defer to the broad discretion trial courts have in making sentencing decisions, and R.C. 2953.08(G) reflects that deference. *See [State v.] Gwynne*, 2023-Ohio-3851, at ¶ 11 (lead opinion), quoting *State v. Rahab*, 2017-Ohio-1401, ¶ 10 (lead opinion). That makes sense: the trial judge presided over the trial and heard the witnesses testify, the defendant made his allocution to the

Case No. 2024-A-0065

sentencing judge directly, and the trial judge will often have heard directly from the victims at sentencing. Thus, an appellate court's role is not to be a "second-tier sentencing court." *State v. Ladson*, 2016-Ohio-6729, ¶ 9 (8th Dist.); *see also State v. Jones*, 2020-Ohio-6729, ¶ 41-42. Appellate courts possess no inherent right to review a felony sentence. Indeed, "[e]xcept to the extent specifically directed by statute, 'it's not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.'" *Williams v. United States*, 503 U.S. 193, 205 (1992), quoting *Solem v. Helm*, 463 U.S. 277, 290, fn. 16 (1983).

*State v. Glover*, 2024-Ohio-5195, ¶ 39.

{¶18} The appellate court is required to determine if the trial court engaged in the proper analysis and that the record contains the requisite evidence to support it. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 2014-Ohio-3177, at ¶ 29.

{¶19} Blaskis had more than 150 images in his possession. Blaskis was convicted on four counts for four of those images, each depicting four different minor victims. The dissent incorrectly takes issue with the trial court's sentence for considering unindicted conduct in rendering its sentence. The trial court is not required to turn a blind eye to evidence that clearly exists in the record. On the contrary, the trial court can consider uncharged conduct and other relevant history in making its determination.

> In considering uncharged conduct, this court has held that 'a sentencing judge can consider a defendant's uncharged conduct as a basis for establishing a history of criminal conduct for purposes of ordering consecutive service.'

*State v. Wright*, 2018-Ohio-965, ¶ 21 (8th Dist.), quoting *State v. Steele*, 2017-Ohio-7605, ¶ 21 (8th Dist.), quoting *State v. Thomas*, 2014-Ohio-5153, ¶ 27 (8th Dist.). *See also State*

Case No. 2024-A-0065

*v. Donkers*, 2007-Ohio-1557, ¶ 170 (11th Dist.) (sentencing court can consider mere arrests for other crimes); *Thomas* at ¶ 27 (unindicted acts or not guilty verdicts can be considered as long as they are not the sole basis for the sentence); *State v. Greitzer*, 2005-Ohio-4037, ¶ 65 (trial court can consider prior arrests and charges even though they did not lead to convictions). As Ohio law plainly allows a sentencing judge to consider dismissed conduct, uncharged conduct, other arrests, or prior criminal conduct, it was proper for the trial judge to consider Blaskis's possession of more than 150 images of child pornography as that was not the sole factor used to impose consecutive sentences.

{¶20} The dissent's narrow interpretation of "harm" under R.C. 2929.14(C)(4)(b) contravenes established precedent. The statute permits consecutive sentences when "the harm caused by two or more of the multiple offenses was so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the offender's conduct."

{¶21} The trial court correctly determined that the possession of over 150 images of child pornography (depicting four different minor victims) constituted harm "so great or unusual" that consecutive sentences were warranted. When considering the harm caused by possessing child pornography, courts and legal authorities recognize several distinct categories of harm:

> 1. Direct harm to depicted victims: Each image represents documentation of actual abuse. When someone possesses these images, they perpetuate the market demand that drives continued production and abuse. The victims often suffer ongoing psychological trauma knowing their abuse continues to be viewed.
>
> 2. Revictimization: The knowledge that images of their abuse continue to circulate causes ongoing trauma to victims. It is a well-established legal conclusion that children of child pornography are continuously revictimized. *State v. Bonness*, 2012-Ohio-474, ¶ 20 (8th Dist.). The United States

Case No. 2024-A-0065

Supreme Court has long held that "the distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children." *New York v. Ferber*, 458 U.S. 747, 759 (1982). As the Court explained, these materials not only create a "permanent record" of the child's participation, but the harm to the child is exacerbated by their circulation. *Id.*

3. Market perpetuation: Possession creates demand in the marketplace for such material indirectly encouraging the continued production and therefore continued abuse of children. This economic harm is recognized in both federal and state jurisprudence.

4. Normalization of child exploitation: Collecting such material can normalize sexual interest in children and potentially increase the risk of other offenses. Courts have recognized this as a public safety concern.

5. Psychological harm to communities: These offenses create fear and anxiety in communities about child safety and erode social trust.

In Ohio specifically, courts have recognized in cases like *State v. Shiveley*, 2022-Ohio-4036 (12th Dist.), that the ongoing nature of these harms makes possession offenses particularly serious, as each viewing represents a new violation of the victim's dignity and privacy. The legal recognition of these harms forms the basis for allowing courts to consider the volume of material possessed – even if uncharged – when determining appropriate sentences.

{¶22} The dissent also incorrectly suggests that the reduction from second-degree to fifth-degree felonies through plea negotiations somehow limits the court's ability to consider the defendant's actual conduct. "A plea agreement does not . . . preclude the trial court's consideration of the underlying facts of the case in determining the appropriate sentence to impose." *State v. Blevins*, 2017-Ohio-4444, ¶ 36 (8th Dist.). Similarly, in *State v. Rush*, the Fifth Appellate District recognized that "a sentencing court may consider charges that have been dismissed or reduced pursuant to a plea agreement" and that "'[t]he fact that the charges were dramatically reduced also is a factor in support of the

Case No. 2024-A-0065

court's decision to impose the maximum sentence.'" *State v. Rush*, 2013-Ohio-2728, ¶ 13 (5th Dist.) quoting *State v. Parsons*, 2013-Ohio-1281 ¶ 18, citing *State v. Starkey*, 2007-Ohio-6702 ¶ 2 (7 Dist.).

{¶23} The trial court's consecutive sentences were not based solely on uncharged conduct, but rather on a comprehensive assessment of:

1. The defendant's systematic acquisition of over 150 images of child pornography;

2. The fact that four different minor victims were exploited;

3. The great and unusual harm inflicted upon the victims, the community, and society at large by the defendant's conduct;

4. The statutory factors outlined in R.C. 2929.11 and R.C. 2929.12;

5. The need to protect the public and punish the offender outlined in R.C. 2929.14(C).

As the Eighth District has noted "a defendant's uncharged yet undisputed conduct may be considered in sentencing without resulting in error when it is not the sole basis for the sentence." *State v. Cooper*, 2010-Ohio-1983, ¶ 15 (8th Dist.).

{¶24} The dissent's position would create an artificial barrier between charged and uncharged conduct, undermining the trial court's ability to fashion appropriate sentences based on a complete understanding of the defendant's behavior. The trial court properly exercised its discretion in imposing consecutive sentences totaling 24 months, and its decision is fully supported by Ohio law and the record in this case.

Case No. 2024-A-0065

{¶25} The trial court here made the requisite findings, and those findings were clearly supported by the record. Accordingly, Blaskis's single assignment of error is without merit.

{¶26} The decision of the Ashtabula County Court of Common Pleas is affirmed.

EUGENE A. LUCCI, J., concurs,

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

_____

JOHN J. EKLUND, J., dissents with a Dissenting Opinion.

{¶27} I would vacate the imposition of consecutive sentences in this case and remand the matter with instruction to require that Appellant's sentences be served concurrently.

{¶28} The majority opinion correctly states that the trial court made findings on all issues that R.C. 2929.14(C)(4) sets forth for deciding whether to impose a consecutive sentence. However, I disagree with the majority's conclusion that the record supports those findings. *See State v. Lewis*, 2002-Ohio-3373, ¶ 7 (11th Dist.). Specifically, I would hold that the record clearly and convincingly does not support the trial court's finding, under R.C. 2929.14(C)(4)(b), that the harm caused by two or more of Appellant's offenses "was so great or unusual that no single prison term for any of the **offenses committed** . . . adequately reflects the seriousness of [Appellant's] conduct." (Bold added.)

{¶29} In order for a sentencing court to impose consecutive prison terms it must find (among other things) that one of the circumstances described in R.C.

2929.14(C)(4)(a) to (c) is present. *State v. Woofter*, 2019-Ohio-1166, ¶ 13 (11th Dist.), citing *State v. Beasley*, 2018-Ohio-493, ¶ 252.

{¶30} Here, it is not disputed that the trial court made its finding under (C)(4)(b):

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶31} Thus, under subdivision (C)(4)(b), the trial court is to consider the magnitude ("great") and nature ("unusual") of the "harm caused by two or more of the multiple **offenses so committed**." (Bold added.)

{¶32} The only thing in the record the State argues to support the trial court's finding under R.C. 2929.14(C)(4)(b) is a legal conclusion of the Twelfth District Court of Appeals. The State's argument asserts "that the revictimization of children **through pandering sexual material involving minors causes great or unusual harm**." (Bold added.) (Appellee's brief at p. 4, citing *State v. Shiveley*, 2022-Ohio-4036, ¶ 11-19 (12th Dist.).

{¶33} The State makes a similar assertion that the trial court

> also considered the volume of child pornography involved. The record in this case reveals that the Appellant **attempted the purchase** of 168 images of child pornography. . . . Upon that factual finding, the consecutive sentence is again justified because as a matter of law, it has been held that revictimization of children **through pandering sexual material involving minors causes great or unusual harm.**

(Bold added.) (Appellee's brief at p. 4, citing *Shiveley* at ¶ 11-19).

{¶34} Neither of the State's arguments avail as support for the trial court's findings under R.C. 2929.14(C)(4)(b). First, the record here is crystal clear: Appellant did not plead

guilty to, and was not sentenced for, pandering sexual material. Whatever conclusion the Twelfth District may have drawn from the commission of that crime, it is inapplicable here because it was not "offenses so committed" by Appellant.

{¶35} The same is true for Appellant's "attempted . . . purchase of 168 images." Again, the record plainly shows Appellant was not charged with, did not plead to, and was not convicted of or sentenced for an attempt to purchase 168 images of child pornography. It was not one of the "offenses so committed" and therefore outside the scope of R.C. 2929.14(C)(4)(b).

{¶36} Moreover, even had there been a conviction in the present case for attempted buying of sexual material, it still would not have been the "pandering" offense on which the State says the Twelfth District opined in *Shiveley.* Therefore, *Shiveley* and its application of the precept that pandering sexual material involving minors causes great or unusual harm would remain inapt for the analysis of the case before us.

{¶37} Finally, it bears noting that the appellant in *Shiveley* had pled guilty to five counts of Pandering and one count of Illegal Use of a Minor. All of the offenses were second-degree felonies. *Id.* at ¶ 2. The trial court had imposed consecutive sentences on the Pandering counts.

{¶38} But tellingly, the trial court had made the sentence on the second-degree felony Use of a Minor offense concurrent with the fifth count of Pandering, a decision left undisturbed on appeal. That further erodes the utility of *Shiveley* as precedent upon which we should base our decision in this case.

{¶39} In sum, under subdivision (C)(4)(b), the trial court is to consider the magnitude ("great") and nature ("unusual") of the "harm caused by two or more of the

Case No. 2024-A-0065

multiple **offenses so committed**," not ones for which there has been no charge or conviction. (Bold added.) The uncharged "attempt" to buy images and the "pandering" that was not committed cannot meet the standard of (C)(4)(b) for imposing consecutive sentences for Appellant's Illegal Use of a Minor offenses. Whatever harm that conduct causes generally, or could cause, it was not from an "offense so committed" in this case.

{¶40} The majority opinion makes the (uncontested) point that a sentencing court may consider mere arrests for other crimes, *State v. Donkers*, 2007-Ohio-1557, ¶ 170 (11th Dist.), that it may consider a defendant's "uncharged conduct as the basis for establishing a **history of** criminal conduct for purposes of ordering consecutive service," (bold added)

{¶41} *State v. Steele,* 2017-Ohio-7605, ¶ 11 (8th Dist.) and that it may consider "[u]nindicted acts or not guilty verdicts." *State v. Thomas*, 2014-Ohio-5153, ¶ 27 (8th Dist.). I agree. R.C. 2929.11, 2929.12, and 2929.14(A), (C)(4), and (C)(4)(c) obviously allow for such consideration.

{¶42} But none of the cases cited should bear on the decision in this case. *Donkers* involved misdemeanor sentences, none of which was ordered to be served consecutively. So, there was no analysis of R.C. 2929.14(C)(4). *Thomas* involved the court's analysis of R.C. 2929.14(C)(4) generally (and not (C)(4)(a)-(c)), to wit: whether consecutive sentences were necessary to punish the offender and not disproportionate to the seriousness of his conduct and the danger he posed to the public (neither of which is relevant here). In *Edwards* the Eighth District noted, and approved, the trial court's considering non-charged conduct, not under R.C. 2929.14(C)(4), but under R.C. 2929.12(D) (risk of recidivism).

Case No. 2024-A-0065

{¶43} Here, we know the trial court did not consider the uncharged images, or anything else, as part of the Appellant's history of criminal conduct under 2929.14(C)(4)(c) because it found that Appellant had "no past criminal record . . . . These are his first offenses." If the trial court considered them here under one of the other cited sections, we may infer that the sentence the trial court imposed on Appellant (the **minimum** definite term available under R.C. 2929.14(A)) reflected them. But for the foregoing reasons, they do not bear upon the consecutive sentencing finding with which we are concerned.

{¶44} Like the majority, I have reviewed the record and, like the State, find nothing else in it that even arguably supports the trial court's finding under R.C. 2929.14(C)(4)(b). So I respectfully dissent. I would modify Appellant's sentences to be served concurrently and remand for resentencing consistent with such an opinion.

Case No. 2024-A-0065

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, appellant's single assignment of error is without merit. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
PRESIDING JUDGE ROBERT J. PATTON

_____
JUDGE EUGENE A. LUCCI,
concurs

_____
JUDGE JOHN J. EKLUND,
dissents with a Dissenting Opinion

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-A-0065