[Cite as *State v. Conacher*, 2025-Ohio-5568.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# GEAUGA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

ELIZABETH R. CONACHER,

        Defendant-Appellant.

CASE NO. 2025-G-0020

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2023 C 000132

## OPINION AND JUDGMENT ENTRY

Decided: December 15, 2025
Judgment: Affirmed

*James R. Flaiz*, Geauga County Prosecutor, and *Nicholas A. Burling*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*William C. Livingston*, Berkman, Gordon, Murray & Devan, 55 Public Square, Suite 2200, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Appellant, Elizabeth R. Conacher, appeals from the judgment entry of sentence of the Geauga County Court of Common Pleas following her plea of guilty to Aggravated Trafficking in Drugs. We affirm.

{¶2} On August 21, 2023, a nine-count indictment was filed against Conacher, charging her with multiple drug offenses. On November 14, 2024, Conacher entered a plea of guilty to Count One, Aggravated Trafficking in Drugs, a second-degree felony in violation of R.C. 2925.03(A)(1)(C)(1)(d). The State agreed to dismiss the remaining counts of the indictment. At the plea hearing, the prosecutor explained that Conacher

was indicted as a result of multiple controlled drug buys conducted by the Geauga County Sheriff's Office during the summer of 2022. Specifically, on August 16, 2022, they conducted a controlled buy of methamphetamine from Conacher. The substance tested positive for 28 grams of methamphetamine, which is greater than five times the bulk amount.

{¶3} The trial court ordered a presentence investigation and, on April 18, 2025, conducted a sentencing hearing. Defense counsel argued the minimum mandatory prison term of two years was appropriate in this case because Conacher accepted responsibility for her conduct, has no prior felony history, demonstrated mental health issues, and is, "at best, an amateur dabbler in the conduct" that brought her before the court. He asked the court to consider that Conacher has a seven-year-old severely autistic child, for which she has no family or other support. Conacher accepted responsibility for her conduct, expressed remorse that someone had lost their life as a result, and asked the court to give her another chance.

{¶4} The prosecutor asked for a minimum seven-year prison sentence. He explained the investigation began when the sheriff's office responded to two people who had overdosed on suspected heroin, one of those individuals died, and the other individual told a detective that he got the drugs from Conacher and provided her contact information. The sheriff's office set up four controlled drug buys with Conacher. The undercover detectives sought to buy heroin during the first two buys, and Conacher sold them fentanyl. They purchased methamphetamine during the third buy and a large amount of methamphetamine during the fourth buy. When the detectives arrested Conacher, she had an additional large amount of methamphetamine on her person,

presumably for a different sale. The prosecutor stated that although they did not have evidence beyond a reasonable doubt to charge Conacher with manslaughter, the case against her originated with the overdose death. He also reviewed Conacher's criminal history, noting she had a robbery charge in another county that was reduced from a felony.

{¶5} The trial court called Conacher a "drug dealer," noted her ability to support her child by other means, and commented that she brought a significant amount of drugs into the county, would not disclose from where, and somebody lost their life because of it. The court sentenced Conacher to a minimum of five years up to a maximum of seven-and one-half years in prison, ordered post-release control up to three years but not less than eighteen months, and waived the mandatory fine of $7,500.00 due to Conacher's indigency.

{¶6} Conacher filed a timely appeal and raises two assignments of error for our review:

> [1.] The trial court erred in sentencing Appellant based on uncharged conduct and incorrect information.
>
> [2.] Appellant received ineffective assistance of counsel because her trial counsel failed to object and assert her rights secured under the Fifth and Fourteenth Amendments to the United States Constitution when the trial court penalized her at sentencing for exercising her constitutional right against self-incrimination.

{¶7} In her first assignment of error, Conacher argues that her sentence is contrary to law and violates her right to due process because it is based on uncharged conduct and incorrect information. The State responds that the trial court's sentence was based on an appropriate consideration of the entire circumstances of Conacher's crimes.

Case No. 2025-G-0020

{¶8}     We review felony sentences using the standard of review set forth in R.C. 2953.08(G)(2), which provides that an appellate court may increase, reduce, vacate, or otherwise modify a felony sentence on appeal only if it clearly and convincingly finds that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.  *State v. Marcum*, 2016-Ohio-1002, ¶ 1.

{¶9}     "A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing . . ., commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).  The three overriding purposes of felony sentencing are "[1] to protect the public from future crime by the offender and others, [2] to punish the offender, and [3] to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources."  R.C. 2929.11(A).  "To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."  *Id*.

{¶10}   R.C. 2929.12(A) provides broad discretion to a court sentencing a felony offender to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11(A).  In exercising that discretion, the sentencing court shall consider the factors set forth in R.C. 2929.12 relating to the seriousness of an offender's conduct and the likelihood of the offender's recidivism, and it may consider any other relevant factors.  *Id*.  Even "[a] defendant's uncharged yet undisputed conduct may

be considered in sentencing without resulting in error when it is not the sole basis for the sentence." *State v. Russell*, 2020-Ohio-3243, ¶ 116 (11th Dist.), citing *State v. Cooper*, 2010-Ohio-1983, ¶ 15 (8th Dist.); *see also State v. Bowser*, 2010-Ohio-951, ¶ 15 (2d Dist.) ("The court may even consider mere allegations of crimes for which the offender is never prosecuted."), citing *State v. Cooey*, 46 Ohio St.3d 20, 35 (1989) (allegations of uncharged criminal conduct found in a PSI report may be considered as part of the offender's social history); *accord State v. Fox*, 69 Ohio St.3d 183, 193 (1994) and *State v. Blaskis*, 2025-Ohio-1896, ¶ 19 (11th Dist.) ("Ohio law plainly allows a sentencing judge to consider dismissed conduct, uncharged conduct, other arrests, or prior criminal conduct" when imposing sentence).

{¶11} At Conacher's sentencing hearing, the prosecutor explained that "while the State didn't have enough evidence beyond a reasonable doubt to bring her here on the manslaughter charge, that's where this case originated . . . ." When imposing sentence, the trial court made the following statement: "So, you know, the fact that you've brought this significant amount of drugs into this county, from where, my understanding is you won't tell anyone, *and somebody lost their life because of it*." (Emphasis added.)

{¶12} Conacher claims this was error because she was not charged with any offense related to the alleged overdose death. However, in her statement to the court at sentencing, Conacher acknowledged her actions led to the overdose death: "I made a mistake, and it was a stupid one, and I do apologize, and I know it cost somebody their life, and I'm so sorry that – I didn't intend that, and I'm just sorry." Moreover, the overdose death was not the sole basis for the length of Conacher's sentence. The court also noted Conacher's "rather extensive time as a drug dealer" of "three different types of drugs in

significant amounts over a period of time" and considered recidivism factors, such as the fact that Conacher was working and she has a young child. The trial court was therefore permitted to consider that Conacher's aggravated trafficking in drugs led to someone's death. Accordingly, we do not clearly and convincingly find that Conacher's sentence is contrary to law or that her due process rights were violated.

{¶13} Conacher's first assignment of error is without merit.

{¶14} In her second assignment of error, Conacher contends she received ineffective assistance of counsel at the sentencing hearing.

{¶15} To prevail on an ineffective-assistance-of-counsel claim, the defendant must prove (1) trial counsel's performance was deficient and (2) the defendant was prejudiced by counsel's deficient performance. *State v. Davis*, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.*, citing *Bradley* at paragraphs two and three of the syllabus. "'"A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" *Id.*, quoting *Bradley* at 142, quoting *Strickland* at 694. Under the *Strickland* test, "a court must apply 'a heavy measure of deference to counsel's judgments,' . . . and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Burke*, 2002-Ohio-5310, ¶ 7, quoting *Strickland* at 689, 691.

Case No. 2025-G-0020

{¶16} Again, before imposing sentence, the trial court stated: "So, you know, the fact that you've brought this significant amount of drugs into this county, *from where, my understanding is you won't tell anyone*, and somebody lost their life because of it." (Emphasis added.) Conacher argues the trial court violated her Fifth Amendment privilege against self-incrimination by considering her refusal to identify the source of the drugs and that, had counsel objected, there is a reasonable probability the outcome of her sentence would have been different. We disagree.

{¶17} The Fifth Amendment's privilege against compulsory self-incrimination is protected against state abridgment through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). The Fifth Amendment provides, in part, that "[n]o person shall be compelled in any criminal case to be a witness against himself." "It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984), quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). The privilege against self-incrimination extends through the sentencing phase "because liability for the crime with which the defendant is charged continues until the sentence has been imposed." *State v. Brunson*, 2022-Ohio-4299, ¶ 75, citing *Mitchell v. United States*, 526 U.S. 314, 328-330 (1999). Thus, "a guilty plea does not waive the self-incrimination privilege at sentencing," *Mitchell* at 314, and "[a] sentencing court may not draw an adverse inference from a defendant's silence in determining facts relating to the circumstances and details of the crime," *id.* at 315.

{¶18} Conacher's reliance on *Roberts v. United States*, 445 U.S. 552 (1980) in support of her argument on appeal is misplaced. In *Roberts*, the defendant pled guilty to two counts of misusing a telephone in a heroin distribution operation. *Id*. at 554. The trial court imposed consecutive sentences based in part on the defendant's refusal to identify the drug suppliers. *Id*. at 555. On appeal, the defendant argued that his refusal to name any coconspirators was justified by fears of physical retaliation and self-incrimination and that the trial court had punished him for exercising his Fifth Amendment privilege against self-incrimination. *Id*. at 559. The United States Supreme Court disagreed because the defendant's arguments had not been presented properly to the sentencing judge, and "the mere possibility of unarticulated explanations or excuses for antisocial conduct does not make that conduct irrelevant to the sentencing decision." *Id.* "The Fifth Amendment privilege against compelled self-incrimination is not self-executing. At least where the Government had no substantial reason to believe that the requested disclosures are likely to be incriminating, the privilege may not be relied upon unless it is invoked in a timely fashion." *Id*. "Thus, if petitioner believed that his failure to cooperate was privileged, he should have said so at a time when the sentencing court could have determined whether his claim was legitimate." *Id*. at 560.

{¶19} The decision in *Roberts* is inapposite to Conacher's appeal. First, Conacher does not argue in her merit brief that she refused to identify the source of the drugs in reliance on her Fifth Amendment privilege against self-incrimination. Moreover, it is not apparent from the record that Conacher was requested to identify the source of the drugs or that her silence in that regard was an invocation of her Fifth Amendment privilege against self-incrimination. The trial court did not seek to have Conacher identify the

Case No. 2025-G-0020

source of the drugs at sentencing, and there is no mention of such a discussion in the presentence investigation report. "[P]opular misconceptions notwithstanding, the Fifth Amendment guarantees that no one may be 'compelled in any criminal case to be a witness against himself'; it does not establish an unqualified 'right to remain silent.' A witness' constitutional right to refuse to answer questions depends on his reasons for doing so, and courts need to know those reasons to evaluate the merits of a Fifth Amendment claim." *Salinas v. Texas*, 570 U.S. 178, 189 (2013). *See also United States v. Morgan*, 145 F.3d 1343, *1 (9th Cir. 1998) ("Because Morgan did not assert that his failure to disclose information regarding the robbery was privileged, the sentencing court was free to consider his lack of cooperation in determining his sentence."); *Island v. United States*, 946 F.2d 1335, 1339 (8th Cir. 1991) ("Nowhere in the record or transcript of the sentencing hearing, however, can we find any indication of Island asserting his privilege against self-incrimination before sentencing."); *State v. Kaczynski*, 258 Wis.2d 653, ¶ 9 (2002), quoting *Holmes v. State*, 76 Wis.2d 259, 276 (1977) ("unless a defendant's rights against self-incrimination are implicated (and Kaczynski makes no claim that they are), it is 'entirely proper' for a trial court 'to consider on sentencing, the defendant's cooperativeness as manifested by his refusal to name his accomplices'").

{¶20} In short, because the record does not disclose the reasons why Conacher allegedly refused to identify the source of the drugs or how the trial court became aware of her alleged refusal to do so, we cannot conclude in this appeal that her defense counsel was deficient for failing to object to the trial court's statement at sentencing. *See State v. Richter*, 2004-Ohio-6682, ¶ 18 (11th Dist.) (direct appeal from judgment of conviction is limited to trial court record; claims based on evidence de hors the record may be raised

Case No. 2025-G-0020

in petition for post-conviction relief). Moreover, because the trial court considered other significant factors when imposing sentence, Conacher has not demonstrated that the court would have imposed a lesser sentence had defense counsel objected. Accordingly, Conacher cannot establish the necessary prejudice to succeed on her ineffective assistance of counsel claim.

{¶21} Conacher's second assignment of error is without merit.

{¶22} The judgment entry of sentence of the Geauga County Court of Common Pleas is affirmed.


ROBERT J. PATTON, P.J.,

SCOTT LYNCH, J.,

concur.

Case No. 2025-G-0020

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.


_____
JUDGE MATT LYNCH


_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs


_____
JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-G-0020